**STATE of Iowa, Appellee,**

v.

**Willie Lee ADAMS, Appellant.**

No. 95–1507.

Supreme Court of Iowa.

Sept. 18, 1996.

Rehearing Denied Oct. 22, 1996.

Michael R. Stowers of Babich, McConnell & Renzo, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Ann E. Brenden, Assistant Attorney General, John P. Sarcone, County Attorney, and Daniel C. Voogt, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Willie Lee Adams, appeals his convictions and sentences for possession of cocaine base with intent to deliver in violation of Iowa Code section 124.401(1)(c)(3) (1993) and failure to possess a drug tax stamp in violation of Iowa Code section 453B.12. He raises several issues on appeal: (1) evidence obtained in a search of Adams after his arrest for theft should have been suppressed; (2) the trial court erred in failing to grant Adams' motion for judgment of acquittal on the tax stamp charge because the State failed to prove cocaine base is sold in dosage units; (3) the trial court erred in failing to grant Adams' motion for judgment of acquittal on the possession with intent to deliver charge because there was insufficient evidence of intent to deliver; (4) the trial court abused its discretion in sentencing Adams to a prison term; and (5) Adams did not make a knowing and intelligent waiver of his right to a preliminary hearing. Finding no merit in these assignments of error, we affirm.

I. *Background Facts and Proceedings.*

On December 21, 1995, Adams entered a department store and proceeded to place a hat inside his jacket. Without paying for the hat, he left the store. Once outside, he was confronted by the store's loss prevention officer. The store employee questioned Adams about the hat. Adams denied taking it, but the hat then fell out of his coat onto the ground. Adams was escorted back into the store and the police were notified of the shoplifting incident.

A police officer arrived at the store. The officer immediately placed Adams under arrest for shoplifting and patted him down. During the pat down, the officer felt a bag with several lumps of material in Adams' pocket. Upon removing the bag, the officer saw what he believed to be cocaine base, also known as crack cocaine. He also found $454 cash on Adams' person. The officer transported Adams to the police station.

The State charged Adams by preliminary complaint with possession of cocaine base with intent to deliver and failure to possess a drug tax stamp.[1] At his initial appearance, Adams waived a preliminary hearing. Adams later requested a preliminary hearing but the district court denied his request.

The State filed a trial information and Adams entered a plea of not guilty. Adams then filed a number of motions, two of which are relevant to this appeal: (1) a motion to suppress the controlled substances found by the arresting officer on the basis the search and seizure were unlawful; and (2) a motion for bill of particulars attacking the tax stamp count on the basis cocaine base is not sold in dosage units as contemplated by Iowa Code section 453B.1(3).

The case proceeded to a bench trial at which Adams stipulated to the minutes of testimony. The court found Adams guilty of both counts, and subsequently denied Adams'

---

1. Adams was also charged with fifth-degree theft. *See* Iowa Code §§ 714.1, .2(5). This charge was the subject of a separate proceeding.

motion for judgment of acquittal challenging the sufficiency of the evidence to support the court's judgment. After a presentence investigation report showed Adams had no prior criminal history, Adams requested deferred judgments on both convictions and probation. The court, however, sentenced Adams to concurrent indeterminate terms of imprisonment on each count. Adams appealed.

II. *Did the Trial Court Err in Overruling Adams' Motion to Suppress the Evidence Discovered During the Police Officer's Search of Adams?*

■ A. *Standard of review.* When the admission of evidence turns on the interpretation of a statute, we review for errors of law. *State v. Kjos,* 524 N.W.2d 195, 196 (Iowa 1994). To the extent Adams' claims are constitutional in nature, we review those claims de novo. *State v. White,* 545 N.W.2d 552, 554 (Iowa 1996). We consider both the evidence presented during the suppression hearing as well as the minutes of testimony constituting the record at trial. *State v. Jackson,* 542 N.W.2d 842, 844 (Iowa 1996).

B. *The parties' contentions.* The State asserts the officer's search of Adams was constitutional because it was conducted incident to Adams' arrest. *See State v. Cook,* 530 N.W.2d 728, 731 (Iowa 1995). Adams' response is multi-layered. Adams first argues Iowa Code section 808.12(1) exclusively controls when and under what circumstances a shoplifter may be searched. He claims the officer's search violated this statute. Adams then contends that even if section 808.12(1) does not state an exclusive standard for searching shoplifters, the search cannot be justified as one conducted incident to arrest. That is so because, Adams claims, the police were required by Iowa Code section 805.1(1) to issue him a citation in lieu of arrest. Adams' final contention is Iowa Code section 805.1(4), which allows police to conduct a search incident to the issuance of a citation, is unconstitutional.

C. *Does Iowa Code section 808.12(1) provide the exclusive means by which police may search a shoplifter?* Adams contends

any search of a shoplifter must fall within the scope of section 808.12(1):

> Persons concealing property as set forth in section 714.5, may be detained and searched by a peace officer ... provided that the detention is for a reasonable length of time and that the search is conducted in a reasonable manner by a person of the same sex and according to subsection 2 of this section.

Iowa Code § 808.12(1).[2] Adams argues the police officer's search of him violated this statute because Adams was not "concealing property" at the time of the search; the cap he took had already been recovered by the store employee and neither the police nor store personnel testified they suspected he had other merchandise concealed on his person.

■ In considering Adams' argument, we must decide whether the legislature, in enacting section 808.12, intended that this statute provide the *exclusive* authority for searching a shoplifter. To ascertain legislative intent, we look to what the legislature said. *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996). We do not speculate as to the probable legislative intent apart from the words used in the statute. *State v. Haberer,* 532 N.W.2d 757, 759 (Iowa 1995). The wording of the statute, however, is important for what is not stated as well as for what is stated. In this regard, we follow the rule that legislative intent is also expressed by the legislature's failure to address an issue. *Wiebenga v. Iowa Dep't of Transp.,* 530 N.W.2d 732, 735 (Iowa 1995) ("legislative intent is expressed by omission as well as by inclusion").

■ In examining section 808.12, one finds no words that directly state or imply searches of shoplifters may *only* be conducted under the circumstances specified in the statute. If the legislature intended to preclude the police from searching an *arrested* shoplifter unless the shoplifter was concealing stolen merchandise, we would expect the statute to clearly express such a dramatic limitation on the authorities' power to search.

---

**2.** Iowa Code §.714.5, to which the statute refers, merely provides that the fact one has concealed

unpurchased property of a store is "material evidence of intent to deprive the owner."

Because we find no evidence of the legislature's intent to impose such a limitation, we conclude a warrantless search that is constitutionally valid under the Fourth Amendment to the United States Constitution is unaffected by section 808.12(1). This conclusion makes it unnecessary for us to consider what requirements are imposed by section 808.12 for searches conducted pursuant to that statute and whether the search here met those requirements.

D. *Was the police officer's search of Adams constitutionally permissible as a search incident to arrest?* Adams argues that even if section 808.12 does not limit the authority officers would otherwise have to conduct a search incident to arrest, the search of Adams cannot be justified. He claims the police were required to issue him a citation in lieu of arrest.

■ Iowa Code section 804.7(2) allows a police officer to arrest a person without a warrant where a public offense has been committed and the officer has reasonable grounds for believing the person arrested has committed it. A "public offense" is conduct prohibited by statute and punishable by a fine or imprisonment. Iowa Code § 701.2. Taking possession of another's property not exceeding one hundred dollars in value with the intent to deprive the owner of the property is theft in the fifth degree. *Id.* §§ 714.1, .2(5). Clearly, probable cause existed here to believe Adams committed fifth-degree theft, thereby justifying his arrest for that offense.

■ Adams argues, however, that Iowa Code section 805.1(1) *requires* the police to issue a citation in lieu of arrest. The clear wording of the statute belies such an intent:

> Except for an offense for which an accused would not be eligible for bail under section 811.1, ... a peace officer having grounds to make an arrest *may* issue a citation in lieu of making an arrest without a warrant or, if a warrantless arrest has been made, a citation may be issued in lieu of continued custody.

Iowa Code § 805.1(1) (emphasis added). The use of the word "may" shows the legislature's intention to confer a discretionary power, not to impose a requirement. *State ex rel. Lank-*

*ford v. Allbee,* 544 N.W.2d 639, 641 (Iowa 1996); *Little v. Winborn,* 518 N.W.2d 384, 387 (Iowa 1994). *Compare* Iowa Code § 4.1(30)(c) ("The word 'may' confers a power.") *with id.* § 4.1(30)(a) ("The word 'shall' imposes a duty.") *and id.* § 4.1(30)(b) ("The word 'must' states a requirement."). Consequently, section 805.1(1) does not require an officer to issue a citation in lieu of making an arrest. Therefore, the police officer here was free to exercise his judgment in deciding whether to arrest Adams or issue him a citation.

■ Adams' fall-back position is that section 805.1(3)(a) creates a presumption a citation should be issued unless the factors listed in section 805.1(3)(b) are met. Section 805.1(3)(a) states

> State and local law enforcement agencies in the state of Iowa may cooperate to formulate uniform guidelines that will provide for the maximum possible use of citations in lieu of arrest and in lieu of continued custody for offenses for which citations are authorized. These guidelines shall be submitted to the Iowa law enforcement academy council for review. The Iowa law enforcement academy council shall then submit recommendations to the general assembly no later than January 1, 1984.

Iowa Code § 805.1(3)(a). Subparagraph (b) of this section goes on to list "[f]actors to be considered by the agencies in formulating the guidelines." *Id.* § 805.1(3)(b).

We think Adams' interpretation of section 805.1(3) reads too much into the statute. There is no wording in the statute indicating the legislature's intent to create a legal presumption in favor of issuing a citation. Nor is there any language evidencing an intent by the legislature to limit law enforcement authorities' ability to make a warrantless arrest as permitted by section 804.7(2). *See id.* § 804.7(2) (police may arrest a person without a warrant where a public offense has been committed and the officer has reasonable grounds for believing the person arrested has committed it). The statute merely encourages the development of state-wide uniform guidelines to assist officers in exercising the discretion granted under section 805.1(1) to issue a citation in lieu of arrest.

If the legislature had intended to codify the factors listed in section 805.1(3)(b) as mandatory considerations in deciding whether to issue a citation or make an arrest, the legislature would not have referred to them as "factors *to be considered by the agencies* in formulating *guidelines.*" *See id.* § 805.1(3)(b) (emphasis added).

In summary, the police officer here was authorized to arrest Adams for fifth-degree theft and, having done so, could constitutionally search Adams incident to that arrest. Neither section 808.12, authorizing searches of suspected shoplifters, nor section 805.1(3), allowing officers to issue a citation in lieu of arrest, limit the police officer's authority to make an otherwise valid arrest and conduct a search incident to that arrest. Because the search of Adams' person was constitutionally valid, the trial court did not err in denying Adams' motion to suppress the evidence found during that search.[3]

### III. *Did the Trial Court Err in Failing to Grant Adams' Motion for Judgment of Acquittal?*

**A.** *Standard of review.* In considering Adams' challenges to the sufficiency of the evidence, we examine the record in the light most favorable to the State. *State v. Crone,* 545 N.W.2d 267, 270 (Iowa 1996). We look for substantial evidence, including any inferences arising from the evidence, to support the verdict. *Id.* If the verdict is supported by substantial evidence, it is binding on us. Iowa R.App.P. 14(f)(1). Evidence that could convince a trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt is substantial evidence. *State v. Terry,* 544 N.W.2d 449, 451 (Iowa 1996). Although Adams cites to evidence introduced at the suppression hearing, for purposes of reviewing the sufficiency of the evidence to support the judgment of conviction, we confine our consideration to the trial record. *See State v. Uthe,* 542 N.W.2d 810, 815 (Iowa 1996) ("We consider all the evidence *at trial,* not just the evidence supporting the verdict.") (emphasis added); *State v.*

*Conyers,* 506 N.W.2d 442, 444 (Iowa 1993) (same).

**B.** *Sufficiency of the evidence on the drug tax stamp conviction.* Adams was convicted of failing to affix a drug tax stamp to the cocaine base in violation of Iowa Code section 453B.12. One of the essential elements of this crime is that the defendant is a "dealer." *White,* 545 N.W.2d at 555. The word "dealer" is defined in chapter 453B:

> "Dealer" means any person who ... possesses ... in this state any of the following:
>
> . . . .
>
> c. Ten or more dosage units of a taxable substance which is not sold by weight.

Iowa Code § 453B.1(3). A "dosage unit" is "the unit of measurement in which a substance is dispensed to the ultimate user." *Id.* § 453B.1(6). Examples of dosage units given in the statute are pills, capsules and microdots. *Id.*

Adams claims the cocaine base he possessed is sold by weight, not by dosage unit. Because this case was submitted to the court on the defendant's stipulation to the minutes of testimony, we review those minutes to decide whether substantial evidence exists to support the court's finding Adams possessed "[t]en or more *dosage units* of a taxable substance *which is not sold by weight.*" *See id.* § 453B.1(3)(c) (emphasis added).

The minutes show the police officer arresting Adams would have testified Adams "had ten or more dosage units of crack cocaine." Viewing this evidence in the light most favorable to the State, we think the court could have reasonably inferred from this testimony that a "dosage unit" is the operative measurement unit for sales of this substance. Consequently, there is substantial evidence to support the trial court's finding Adams qualified as a "dealer" under chapter 453B.

**C.** *Sufficiency of the evidence on the possession-with-intent-to-deliver conviction.* Adams was convicted of violating Iowa Code section 124.401(1)(c)(3), the un-

---

**3.** Having concluded Adams' arrest was valid, we need not address his argument that Iowa Code

§ 805.1(4), allowing a search incident to the issuance of a citation, is unconstitutional.

lawful possession of less than five grams of cocaine base with the intent to deliver, a class "C" felony. Intent to deliver is clearly an element of the crime of which Adams was convicted. *State v. Oppedal*, 232 N.W.2d 517, 524 (Iowa 1975). Adams claims there is insufficient evidence to support a finding of this element beyond a reasonable doubt.[4] Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence. *Cf. State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985) (discussing element of intent in burglary case).

 Adams argues that he possessed only 4.69 grams of cocaine and this weight "was, at best, consistent with either possession for personal use *or* for distribution." This argument overlooks the fact the amount of the controlled substance is not the only factor which may be considered. Intent may be inferred from the manner of packaging the drugs, *see State v. Birkestrand*, 239 N.W.2d 353, 362 (Iowa 1976), from large amounts of unexplained cash, *see State v. Dandridge*, 213 N.W.2d 903, 904 (Iowa 1974), as well as from the quantity of drugs, *see Olson*, 373 N.W.2d at 136–37.

 The evidence in the minutes of testimony showed Adams possessed 4.69 grams of crack cocaine. The cocaine consisted of numerous small "rocks"; the "rocks" were in a plastic sandwich bag. The police also found $464 in cash on Adams. Adams

gave no explanation at trial explaining why he was carrying this money, a relatively large amount of cash for a twenty-one-year-old. The minutes also reveal two police officers would have testified the crack cocaine and the money "are consistent with those items found in the possession of drug dealers at the street level." [5]

Although one might characterize the quantity of drugs in this case as relatively small, when combined with the cash found on Adams, a trier of fact could reasonably infer Adams had already sold a quantity of drugs, thereby explaining both the small amount of drugs and the large amount of cash. *See United States v. Brett*, 872 F.2d 1365, 1370 (8th Cir.), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989) ("the presence of a large sum of unexplained cash in connection with other evidence of drug trading is probative of the previous occurrence of drug transactions"). Therefore, we think the record evidence is substantial and supports the trial court's finding of an intent to deliver. *See United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir.1979) (four or five grams of cocaine is sufficient to prove intent, where other evidence of intent exists); *Williams v. State*, 261 Ga. 640, 409 S.E.2d 649, 650 (1991) (sufficient evidence of possession with intent to distribute: defendant had 2.7 grams of cocaine and $874 on his person).

### IV. Did the Trial Court Abuse its Discretion in Sentencing Adams to Prison?

 We review the district court's sentencing decision for an abuse of discre-

---

**4.** The State claims Adams is precluded from making this argument because Adams stipulated to the minutes of testimony and thereby admitted the facts contained in those minutes. We disagree. Adams merely stipulated to the minutes of testimony "as the evidence in this case." Adams did not stipulate this testimony was accurate, believable or sufficient to support his conviction. *See State v. Everett*, 372 N.W.2d 235, 237 (Iowa 1985) (although defendant stipulated the trial record would consist of the minutes of testimony attached to the information, the trial court was still required to determine whether the elements of the offense were shown beyond a reasonable doubt).

**5.** Adams complains on appeal that the district court should not have relied on this testimony because whether he possessed an intent to deliver is a fact question inappropriate for expert testimony. We have held a witness may not

testify directly that "a quantity of drugs was possessed by the defendant 'with an intent to deliver'" because such testimony would be tantamount to allowing the witness to give an opinion on the defendant's guilt or innocence. *Oppedal*, 232 N.W.2d at 524. Here, however, the officers did not give an opinion on whether Adams had an intent to deliver; they merely testified that the quantity of drugs and cash was consistent with such items found in the possession of drug dealers. This testimony was not objectionable. *Cf. State v. Lewis*, 514 N.W.2d 63, 68 (Iowa 1994) (allowing police officer to testify that one feature of the Vice Lords gang is the commission of one or more criminal acts; the crime charged required proof defendant participates in an organization having as one of its primary purposes the commission of one or more criminal acts).

tion. *State v. Cason,* 532 N.W.2d 755, 756 (Iowa 1995). To show an abuse of discretion, the defendant must demonstrate the court's sentencing decision was based on clearly untenable grounds or reasons, or the court exercised its discretion to an extent clearly unreasonable. *Id.*

The district court sentenced Adams to concurrent terms of imprisonment. The court also ordered Adams was not required to serve the mandatory one-third minimum sentence imposed by Iowa Code section 124.413. *See* Iowa Code § 901.10 (allowing sentence less than that provided by statute for first-time offenders under section 124.413 if mitigating circumstances exist).

Adams argues the court abused its discretion in not giving him a nonimprisonment sentence. He points out he was only twenty-one years old, had no prior convictions, and the amount of drugs he possessed was relatively small. Adams argues the "only reason" given by the trial court in imposing prison sentences was the seriousness of the offense which is an insufficient ground in view of the factors supporting probation.

 Adams' characterization of the court's sentencing rationale is factually inaccurate. The court relied on the seriousness of the offense but also said imprisonment would protect the public from further criminal activity and would be the best way to rehabilitate the defendant. These reasons are neither untenable nor unreasonable. Moreover, the district court did not exercise its discretion to an extent clearly unreasonable. Although the court sentenced Adams to prison, it waived the mandatory minimum sentence, noting Adams could reduce his term of incarceration with statutory good conduct time, work credits and program credits. It was within the court's reasonable sentencing discretion to decide the defendant and the public would benefit most from a term of imprisonment. We will not disturb the sentence merely because Adams was a young, first-time offender.

### V. *Did Adams Make a Valid Waiver of His Right to a Preliminary Hearing?*

Adams' final claim is based on his waiver of a preliminary hearing. He claims this waiver, made at his initial appearance, was unconstitutional because he had no counsel at his initial appearance. A preliminary hearing, he argues, would have revealed the State's case was "insufficient as a matter of law." Adams requests we "rule that the manner in which Polk County obtains waivers of a defendant's right to a preliminary hearing be held unconstitutional." He requests no other relief. We review this constitutional claim de novo. *White,* 545 N.W.2d at 554.

 "[A] preliminary hearing relates only to [the] legality of detention of one accused of a felony or indictable misdemeanor before he has been charged by either information or indictment." *State v. Franklin,* 163 N.W.2d 437, 439 (Iowa 1968). At the preliminary hearing, the magistrate must determine whether "there is probable cause to believe that an offense has been committed and that the defendant committed it." Iowa R.Crim.P. 2(4)(b). If the magistrate finds probable cause, the defendant is held to answer in further proceedings; otherwise, the complaint is dismissed and the defendant discharged. Iowa R.Crim.P. 2(4)(b), (e).

 The remedy for a violation of rights at the arrest and probable cause stage of criminal proceedings is release from detention, not dismissal of the charge. *State v. Dowell,* 297 N.W.2d 93, 97 (Iowa 1980). A defendant must still answer the charge. *Id.* Even if prejudice affecting the merits of the charge resulted, this fact would not necessarily bar conviction. *See id.*

 In *Dowell,* the defendant's right to a prompt probable cause hearing was denied. *Id.* at 96. We noted the defendant had neither alleged ·nor shown any resulting prejudice affecting the merits of the charge against him. *Id.* at 98. Under these circumstances, we affirmed the defendant's conviction. *Id.*

The same rationale applies here. Even if we assume Adams' alleged rights were violated, we are not convinced he suffered any prejudice to the merits of his case. Adams claims prejudice in three ways: a preliminary hearing would have led to the discovery

(1) the State's case was insufficient as a matter of law; (2) bond was set inappropriately as a result; and (3) the information would have to be amended or dismissed. These arguments apparently refer to the fact the State originally mischarged the defendant with a class "B" felony based on a misapprehension as to the weight of the drugs he possessed.

When the drugs found on Adams were initially weighed, they weighed 6.5 grams in the plastic bag. Based on this information, the State charged Adams with a violation of section 124.401(1)(b)(3), unlawful possession of more than five grams but less than fifty grams of cocaine base with intent to deliver, a class "B" felony. When the cocaine was later weighed without the plastic bag, the weight was 4.69 grams. The State then amended the trial information to reduce the crime charged from a class "B" felony to the class "C" felony of which Adams was ultimately convicted.

We fail to understand how this series of events, regardless of its effect on the original class "B" felony charge and the bond set by the court, affected the merits of the class "C" felony charge. Absent any prejudice, Adams is not entitled to the only relief pertinent to this appeal, namely, reversal of his conviction. We decline his invitation to issue an advisory ruling on the constitutionality of the procedures followed by the county attorney's office where such a ruling has no effect in the case before us.

## VI. *Summary.*

The trial court did not err in overruling Adams' motion to suppress the evidence discovered during the search of his person incident to his arrest for theft. There was substantial evidence to support the trial court's findings that Adams was a "dealer" for purposes of the drug tax stamp charge and that Adams had the intent to deliver for purposes of the possession with intent to deliver charge. The trial court did not abuse its discretion in sentencing Adams to concurrent terms of incarceration for his convictions on these charges. Finally, to the extent any rights of Adams were violated by his waiver of a preliminary hearing, we hold there was no resulting prejudice to the merits of the charges against him. Therefore, he is entitled to no relief.

**AFFIRMED.**