Jack EATON, Appellant,

v.

IOWA EMPLOYMENT APPEAL
BOARD, and Deere & Company,
Appellees.

No. 98–788.

Supreme Court of Iowa.

Nov. 17, 1999.

Joe Walsh of Hedberg, Owens, Hedberg
& Spaulding, Des Moines, for appellant.

Richard R. Ramsey, Des Moines, for
appellee Iowa Employment Appeal Board.

Kathryn Atkinson Overberg and Thom-
as W. Foley of Nyemaster, Goode, Voigts,
West, Hansell & O'Brien, P.C., Des
Moines, for appellee Deere & Company.

Considered by McGIVERIN, C.J., and
LAVORATO, NEUMAN, SNELL, and
TERNUS, JJ.

TERNUS, Justice.

Appellant, Jack Eaton, was terminated
from his employment after he failed a drug
test requested by his employer, appellee

Deere & Company. He was later denied unemployment compensation benefits on the basis of misconduct. This denial was affirmed by the appellee, Iowa Employment Appeal Board, and later by the district court. On appeal from the decision of the district court, we conclude that the drug test, upon which the finding of misconduct rested, violated the restrictions on employee drug testing set forth in Iowa Code section 730.5 (1997). Because we hold that an illegal drug test cannot provide a basis to render an employee ineligible for unemployment compensation benefits, we reverse and remand.

## I. *Scope of Review.*

■■■ This court's review of an agency decision is on error. *See Bridgestone/Firestone, Inc. v. Employment Appeal Bd.*, 570 N.W.2d 85, 90 (Iowa 1997); Iowa R.App. P. 4. The agency's decision is binding if substantial evidence supports the decision and it is not based upon an incorrect conclusion of law. *See Bridgestone/Firestone*, 570 N.W.2d at 90. "Evidence is substantial when a reasonable mind would accept it as adequate to reach the same findings." *Freeland v. Employment Appeal Bd.*, 492 N.W.2d 193, 196 (Iowa 1992).

## II. *Drug Testing Law.*

Before we review the factual circumstances of this case, we think it is helpful to understand the statutory context within which the events giving rise to this unemployment compensation claim arose. Therefore, we now examine the law governing employee drug testing as that law existed in 1996 and 1997. At that time, Iowa Code section 730.5(2) stated as follows:

Except as provided in subsection 7,[1] an employer shall not require or request employees or applicants for employment to submit to a drug test as a condition of employment, preemployment, promotion, or change in status of employment. An employer shall not request, require, or conduct random or blanket drug testing of employees.[2]

Section 730.5 also provides, however, that this section "does not prohibit an employer from requiring a specific employee to submit to a drug test" if certain conditions are met, including "probable cause to believe that an employee's faculties are impaired on the job." Iowa Code § 730.5(3)(a). We turn now to the facts of the case.

## III. *Background Facts and Proceedings.*

Because our review focuses in part on the factual findings made by the agency, we begin our examination of the background facts and proceedings with the decision of the administrative law judge (ALJ), denying unemployment benefits to Eaton. The ALJ found the following facts. In 1996, Eaton had been discharged by Deere for violating a nonsmoking policy. He returned to work in June of that year pursuant to the terms of a memorandum of agreement, which had been approved by Eaton's union representative. The agreement required that Eaton "submit to random drug testing at the request of the [Company]" and that if alcohol or nonprescription drugs were detected, his employment would be terminated. On April 7, 1997, Eaton did not work due to a foot problem. On the same day, Otto Stegmaier, supervisor for the human resources department, requested that Eaton submit to a drug test. Eaton did so the following

1. Iowa Code section 730.5(7) allowed drug tests "conducted as a part of a physical examination performed as a part of a preemployment physical or as a part of a regularly scheduled physical" under certain specified conditions. Deere does not contend that this exception has any applicability to the present case.

2. This code section has subsequently been amended to permit an employer, under certain prescribed conditions, to "test employees and prospective employees for the presence of drugs or alcohol as a condition of continued employment or hiring." Iowa Code § 730.5(4) (1999).

day, and the test was positive for the presence of marijuana and cocaine. On April 11, Eaton was terminated because of the positive drug test.[3]

Procedurally, the record shows that Eaton sought unemployment benefits and was held ineligible for them by a representative of the unemployment insurance division of Iowa Workforce Development. On appeal to the ALJ, a hearing was held at which Eaton and Stegmaier testified. The ALJ, making the findings of fact outlined above, affirmed the decision of the representative. Eaton argued at that hearing that the drug test violated the statutory prohibition against employee drug testing. The ALJ held that "[s]ince the claimant had been a long-standing employee, whose previous termination had been·canceled as a result of the memorandum of agreement in June 1996, the prohibition set forth against drug tests does not apply." The ALJ concluded that Eaton's violation of the memorandum of agreement constituted misconduct, so as to render him ineligible for unemployment benefits.[4]

Eaton appealed the ALJ's decision to the Employment Appeal Board. That board affirmed the ALJ's findings, with two modifications not relevant to the facts set out above.[5] Eaton then sought judicial review in the district court. That court agreed with the agency that Iowa Code section 730.5(2) did not apply "to a situation when a long-term employee has been terminated and seeks a last chance to be re-employed with full seniority pursuant to a negotiated agreement." Accordingly, the district court affirmed the agency's decision. The case is now before us on appeal.

## IV.  *Issues on Appeal.*

On appeal, Eaton continues to argue that the memorandum of agreement, as well as the drug test, violates Iowa Code section 730.5(2). He claims that Deere relied on this illegal agreement in requesting the drug test and in terminating him when the results were positive. He asserts that the company cannot rely on an illegal drug test for a finding of misconduct. Because the agency concluded that Eaton's violation of the agreement based

---

3.  On appeal, the appellees argue that Eaton was terminated because "he voluntarily used illegal drugs." They contend, therefore, that the legality of the drug test is not an issue, stating "Eaton is not entitled to unemployment compensation benefits because of his admitted drug use—not because he failed a drug test." We conclude, however, that the ALJ's finding that Eaton was terminated for failing the drug test is supported by substantial evidence. A transcript of a tape recording made of the meeting between Eaton and human resources personnel at which he was informed of his discharge was accepted as an exhibit at the administrative hearing. The employer told Eaton at that meeting: "You tested positive for both cocaine and marijuana use.... [T]hat clearly violates the agreement. As a result, I see us with no alternative but to terminate your employment as of this time." In addition, Mr. Stegmaier testified at the hearing that the reason Eaton was terminated was that he tested positive for having drugs in his system. Consequently, we evaluate Eaton's entitlement to unemployment benefits on the basis that he was discharged, not for using drugs, but for failing a drug test.

4.  Iowa Administrative Code rule 871—24.32(1)(a) defines misconduct:

    Misconduct is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct ... is ... limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees ..., or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer....

5.  These modifications pertained to whether Deere had complied with the statutory requirement that an employer offer substance abuse evaluation and treatment to an employee the first time the employee has a positive drug test. *See* Iowa Code § 730.5(3)(f). Because we conclude Deere failed to comply with section 730.5(3) in another respect, we do not reach the issue of its compliance with the evaluation and treatment provision of that subsection.

on the positive drug test constituted misconduct, Eaton claims the agency's decision is affected by an error of law. *See* Iowa Code § 17A.19(8)(e) (allowing court to reverse agency where its decision is affected by an error of law).

Deere persists in its assertion that the statute does not apply under the circumstances of this case. It also argues that it had probable cause to test Eaton in April of 1997, and, therefore, the drug test was permissible under section 730.5(3).

Before addressing these issues, we note that the parties dispute whether the drug test requested of Eaton was "random" within the meaning of section 730.5(2) or based upon probable cause within the meaning of section 730.5(3). The ALJ found "the drug test to be something more than completely random" based on the memorandum of agreement and Eaton's absences from work on several occasions in the months prior to his discharge. On the other hand, the ALJ made no finding that the drug test was based on probable cause. The unclearness in the ALJ's characterization of this test as random or based on probable cause is of no consequence on appeal, however, because Eaton's drug test does not pass muster under either provision of the drug testing statute, as our ensuing discussion demonstrates.

V. *Did the Drug Test Violate Iowa Code Section 730.5(2)?*

■ A. *Legality of drug test.* Section 730.5(2), as it existed in 1996 and 1997, clearly prohibited random drug testing of employees. *See* Iowa Code § 730.5(2) ("An employer shall not request, require, or conduct random or blanket drug testing of employees."). The statute also contained specific exceptions to this prohibition:

> [T]his section does not apply to preemployment drug tests authorized for peace officers or correctional officers of the state, or to drug tests required under federal statutes or under federal regulations adopted as of July 1, 1990,

or to tests conducted pursuant to a nuclear regulatory commission regulation, or to drug tests conducted to determine if an employee is ineligible to receive workers' compensation under section 85.16, subsection 2.

*Id.* The statute does not expressly include an exception for long-term employees who have been terminated and are seeking reinstatement.

■ In interpreting section 730.5(2), we focus on "what the legislature said." *State v. Adams,* 554 N.W.2d 686, 689 (Iowa 1996) ("To ascertain legislative intent, we look to what the legislature said."). Nevertheless, what the legislature did not say may be just as important as what the legislature did say. *See id.* In this regard, we follow the rule that "legislative intent is 'expressed by omission as well as by inclusion.'" *Wiebenga v. Iowa Dep't of Transp.,* 530 N.W.2d 732, 735 (Iowa 1995) (quoting *Barnes v. Iowa Dep't of Transp.,* 385 N.W.2d 260, 263 (Iowa 1986)). We believe that if the legislature had intended to allow random drug testing of long-term employees who had been given a "last chance," then it would have specifically said so in the statute. The fact that it did not indicates that the legislature did not intend to include such an exception to section 730.5(2)'s prohibition of random employee drug testing. *See Marcus v. Young,* 538 N.W.2d 285, 289 (Iowa 1995) (stating that "the express mention of one thing implies the exclusion of others not so mentioned"). Similarly, to adopt the agency's interpretation of the statute "would require us to read something into the law that is not apparent from the words chosen by the legislature. This we cannot do." *State v. Guzman–Juarez,* 591 N.W.2d 1, 2 (Iowa 1999).

To the extent the agency's decision can be interpreted as including a finding that Eaton's drug test was random, we hold that the test falls squarely within the prohibition of section 730.5(2). Therefore, the

agency erred in holding that the test did not violate this statute.

■ B. *Effect of memorandum of agreement.* In an effort to legitimize Eaton's drug test, Deere points out that Eaton agreed to random drug testing in the 1996 agreement. This agreement, however, does not validate the drug test because the agreement itself also violates section 730.5(2). As we have previously noted, section 730.5(2) states that "an employer shall not require or request employees or applicants for employment to submit to a drug test as a condition of employment, preemployment, promotion or change in status of employment." Stegmaier and Eaton both testified at the unemployment hearing that Eaton was required to sign the memorandum of agreement permitting random drug testing as a condition of his re-employment. The agreement itself states that Eaton will be discharged if he violates the terms of the agreement, thus making his continued employment conditioned on his submission to random drug tests. The fact that Eaton may have "voluntarily" signed the agreement rather than challenge his 1996 discharge, as argued by Deere, does not nullify the fundamental fact giving rise to the statutory violation—that Deere, the employer, required or requested the test as a condition of employment. We conclude the agreement clearly violated section 730.5(2) and cannot justify the drug test conducted in April of 1997.[6]

VI. *Did the Employer Have Probable Cause to Require a Drug Test?*

■ Deere argues alternatively that the agency found Deere had probable cause to

test Eaton in April of 1997. Section 730.5(3) permits an employer to require a specific employee to undergo drug testing if the employer "has probable cause to believe that an employee's faculties are impaired on the job." The legislature did not define the term "probable cause" as used in the drug testing law. This term is frequently used in criminal law, however, where it means "reasonable ground for belief." *State v. Harris,* 490 N.W.2d 561, 563 (Iowa 1992). We apply this standard here, and ask whether there is substantial evidence in the record to support a finding that Deere had reasonable grounds to believe that Eaton's faculties were impaired on the job when it requested him to undergo drug testing on April 7, 1997.

Deere argues that two facts caused it to reasonably believe that Eaton might have a substance abuse problem in April of 1997: (1) Eaton's statement in the memorandum of agreement that he "understands that he is at risk for drug and/or alcohol abuse"; and (2) Eaton's absences from work and tardiness since he returned in 1996. With respect to the latter factor, the record shows that Eaton missed work on November 25, 1996, January 28, 1997, and March 12 and 13, 1997. In addition, he reported late to work on March 18 and 31, 1997. Eaton saw a doctor or nurse at the John Deere Family Health Center each time he was absent. On all occasions, he received a medical excuse. With respect to his tardiness, he told company officials that he was late on March 18 and 31 due to unexpected car problems. Eaton was warned on April 1 that he must come to work regularly and be on time. On April 7, 1997, Eaton was again absent from work and he again reported to the

---

**6.** Deere's reliance on our decision in *Reigelsberger v. Employment Appeal Board,* 500 N.W.2d 64 (Iowa 1993), to support its position that such an agreement is permissible under these circumstances is misplaced. In *Reigelsberger,* the employer required substance abuse treatment and "random urinary analysis" as a condition for continued employment. 500 N.W.2d at 65. The employee refused to undergo treatment. *Id.* The admin-

istrative law judge held that "Reigelsberger was discharged for misconduct in connection with his employment *by failing to begin an alcohol treatment program." Id.* (emphasis added). On judicial review, we affirmed the agency's denial of benefits. *Id.* at 67. The legality of the employer's demand for random drug testing was not discussed and was not an issue in that case. Therefore, the *Reigelsberger* opinion is simply not on point.

**558**

John Deere Family Health Center. A physical examination at that time revealed an inflamed bunion and he was excused from work that day.

At the hearing, Stegmaier testified that he was the one who decided to request a drug test on behalf of the company. He said that he had no disagreement with the fact that Eaton was legitimately absent from work on April 7. He also testified that he had no basis for believing that Eaton was impaired on the job. Stegmaier said that he requested the drug test based on Eaton's prior absences and the company's right to make such a request under the memorandum of agreement.

We do not think the record contains substantial evidence that the employer had probable cause to believe Eaton was impaired on the job at the time it requested he submit to drug testing. *Cf. Johnson v. Massachusetts Bay Transp. Auth.,* 418 Mass. 783, 641 N.E.2d 1308, 1310 (1994) (holding employer had probable cause to test employee for drugs where at the time the test was requested the employee's "eyes [had] a very heavy look, and . . . he appeared to be under the influence of something"). Therefore, to the extent that the agency's decision rested on a finding that the drug test was authorized under section 730.5(3), the decision was not supported by substantial evidence in the record. *See* Iowa Code § 17A.8(f) (allowing court to reverse agency decision where the decision is "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole"). Consequently, Deere cannot rely on section 730.5(3) as authority for the April drug test.

VII. *Conclusion.*

We hold that the drug test required by Deere was prohibited under section 730.5(2), and did not meet the probable cause requirement of section 730.5(3). It would be contrary to the spirit of chapter 730 to allow an employer to benefit from an unauthorized drug test by relying on it

as a basis to disqualify an employee from unemployment compensation benefits. *Cf.* Iowa Code § 730.5(9), (11) (providing civil remedies and criminal penalties for a violation of section 730.5). We hold that the agency erred in ruling that the employer had established misconduct based on Eaton's positive drug test. Accordingly, we reverse the agency's decision and remand for a determination of the benefits to which Eaton is entitled.

**REVERSED AND REMANDED.**