(757 P.2d 735)

No. 60,249

STATE OF KANSAS, *Appellee,* v. HAROLD HICKEY, *Appellant.*

Petition for review denied September 9, 1988.

Opinion filed July 8, 1988.

*Charles D. Dedmon* and *Lucille Marino,* assistant appellate defenders, and *Benjamin C. Wood,* chief appellate defender, for appellant.

*Kerwin L. Spencer,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRAZIL, P.J., RICHARD W. WAHL, District Judge, assigned, and JAMES P. BUCHELE, District Judge, assigned.

WAHL, J.: On February 9, 1986, a semi-trailer driven by Harold M. Hickey left the southbound roadway of Interstate 35, crossed the median, and collided with two vehicles in the northbound lanes. All but two of the occupants of the two northbound vehicles were killed in the accident, a total of six dead. Hickey, suffering minor injuries, was taken to St. Luke's Hospital for blood alcohol testing and medical examination. Hickey was charged with six counts of aggravated vehicular homicide, K.S.A. 1987 Supp. 21-3405a; one count of driving while intoxicated, K.S.A. 1987 Supp. 8-1567; and one count of driving at a speed not reasonable or prudent. K.S.A. 8-1335. After a jury trial, Hickey was found guilty on all counts. Hickey filed a motion, later amended, for a new trial. The motion was denied. Hickey was sentenced to terms of one to two years for each aggravated vehicular homicide conviction; one year and a $500 fine for driving while intoxicated; and a $100 fine for driving at a speed not reasonable and prudent. He filed a motion to modify the sentence, and that motion was denied.

Hickey appeals, contending first the trial court refused to give the jury a proper instruction regarding vehicular homicide. The instructions originally proposed by the trial court did not include an instruction for vehicular homicide under K.S.A. 21-3405. Hickey offered an additional instruction that addressed vehicular homicide as a lesser included offense under aggravated vehicular homicide. Hickey's proposed instruction, the same for each named victim, read in part:

"The offense of aggravated vehicular homicide with which the defendant is charged includes the lesser offense of vehicular homicide. You may find the defendant guilty of aggravated vehicular homicide or vehicular homicide or not guilty. When there is a reasonable doubt as to which of the two offenses defendant is guilty, he may be convicted of the lesser offense only.

"If you cannot agree that the defendant is guilty of aggravated vehicular homicide, you should then consider the lesser included offense of vehicular homicide."

The trial court agreed an instruction on vehicular homicide as

a lesser included offense of aggravated vehicular homicide was appropriate, but used the instruction offered by Hickey as modified by the State. The instruction given, the same for each named victim, read in part:

"The offense of Aggravated Vehicular Homicide with which the defendant is charged includes the lesser offense of Vehicular Homicide. You may find the defendant guilty of Aggravated Vehicular Homicide or Vehicular Homicide or Not Guilty. When there is a reasonable doubt as to which of the two offenses defendant is guilty, he may be convicted of the lesser offense only. *However, to convict the defendant of only Vehicular Homicide rather than Aggravated Vehicular Homicide, you must find that the defendant was not guilty of driving under the influence of alcohol.* If you cannot agree that the defendant is guilty of Aggravated Vehicular Homicide, you should then consider the lesser included offense of Vehicular Homicide." (Emphasis added.)

Both vehicular homicide and aggravated vehicular homicide involve the death of a person resulting from a defendant's operation of a motor vehicle. The manner in which a defendant was driving when the fatal accident occurred determines whether a defendant can be found guilty of vehicular or aggravated vehicular homicide. If a defendant was driving so negligently that he created an unreasonable risk of injury to others, he can be found guilty of vehicular homicide, a class A misdemeanor. K.S.A. 21-3405. However, if a defendant was driving under the influence of alcohol, driving recklessly, or fleeing from or attempting to elude an officer, he can be found guilty of aggravated vehicular homicide, a class E felony. K.S.A. 1987 Supp. 21-3405a.

Hickey complains the vehicular homicide instruction given to the jury does not properly reflect the law. Aggravated vehicular homicide requires the death of the victim within one year as a proximate result *of the operation of a vehicle in the manner described in subsection (1) of K.S.A. 1987 Supp. 21-3405a.* Hickey was charged with causing a death *while driving in violation of K.S.A. 1987 Supp. 8-1567. State v. Woodman,* 12 Kan. App. 2d 110, 116-17, 735 P.2d 1102 (1987), established that, under K.S.A. 1987 Supp. 21-3405a, there must be a causal connection between the victim's death and how the defendant was driving. In the present case, the jury had to find Hickey's driving under the influence was the proximate cause of each victim's death. The instruction given for aggravated vehicular homicide

properly reflected the causal finding required under K.S.A. 1987 Supp. 21-3405a and *Woodman.*

Absent the causal finding to convict Hickey of aggravated vehicular homicide, conviction for the lesser included offense of vehicular homicide should be available. The instruction given for vehicular homicide, however, erroneously told the jury it could not find Hickey guilty of vehicular homicide if it also found him guilty of driving under the influence.

In a criminal action, a trial court must instruct the jury on the law applicable to the theories of both the prosecution and the accused when there is competent supporting evidence. *State v. Hunter,* 241 Kan. 629, 644, 740 P.2d 559 (1987); *State v. Davis,* 236 Kan. 538, Syl. ¶ 4, 694 P.2d 418 (1985); *State v. Farmer,* 212 Kan. 163, 165, 510 P.2d 180 (1973). When a trial court refuses to give a specific instruction, the appellate court must view the evidence in the light most favorable to the requesting party. *State v. Hunter,* 241 Kan. at 644; *State v. Myers,* 233 Kan. 611, 616, 664 P.2d 834 (1983).

Hickey's defense against the charge of aggravated vehicular homicide essentially centered on defeating the proximate cause requirement by showing conditions, other than Hickey's drunk driving, which could have been responsible for the accident. The driving conditions at the time of the accident were extremely hazardous. Every witness at the accident scene testified that ice and sleet made driving very difficult and that many motorists had lost control of their vehicles and left the roadway. At the scene of the accident, Hickey indicated he had lost control of his vehicle when he tried to avoid someone "coming at him in his lane." The record clearly shows there was a wrecker traveling northbound on the shoulder of the southbound turnpike traffic just before the accident. Further, Hickey was convicted of not driving at a reasonable and prudent speed for the existing road conditions. K.S.A. 8-1335. The jury could have found these other conditions were the proximate cause of the accident.

The trial court recognized the possibility of something other than Hickey's drunk driving causing the fatal accident. When agreeing to give an instruction for vehicular homicide as a lesser included offense, the trial judge stated: "The Court feels that under the given facts and circumstances of this case because of the—particularly because of the charge of speed unreasonable

and [im]prudent would be a possibility of finding the defendant guilty of vehicular homicide and so I'm going to give an instruction on that." By then using the instruction for vehicular homicide as modified by the State, however, the trial court judge gave inconsistent instructions to the jury and potentially foreclosed the option of a conviction for the lesser included offense if the jury found Hickey guilty of driving under the influence. Although the complaint on appeal concerns the instruction for vehicular homicide, the essence of the complaint is that the *Woodman* causal requirement was presented in one instruction, and then taken away in another. "The propriety of the instructions to the jury is to be gauged by the consideration of the whole, each instruction to be considered in conjunction with all other instructions in the case." *State v. Price*, 233 Kan. 706, 711, 664 P.2d 869 (1983).

The jury was not given an instruction that properly stated the law in Kansas, and the convictions for aggravated vehicular homicide must be reversed.

We turn now to consider the admissibility of the blood alcohol tests. One blood sample, consisting of at least two tubes, was taken from Hickey at the hospital. One tube was used by the police to test blood alcohol content, and the other tube was drawn for the hospital to use in determining Hickey's medical condition. As part of its testing, the hospital also tested Hickey's blood for its alcohol content.

Hickey moved to have the blood alcohol test results suppressed because the oral and written notices of K.S.A. 1985 Supp. 8-1001(f)(1), applicable at the time, were not given. The district judge hearing the motion suppressed the results from the police testing because K.S.A. 1985 Supp. 8-1001(f)(1) was not followed, but he did not suppress the results from the hospital's testing as that testing was not done by the State. The statutory requirements of K.S.A. 1985 Supp. 8-1001(f)(1), therefore, did not apply.

In the decision of *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 755 P.2d 1337 (1988), the Supreme Court held that the notice provisions of K.S.A. 1985 Supp. 8-1001(f), now K.S.A. 1987 Supp. 8-1001(f), are mandatory, not directory. The district judge correctly suppressed the test results from police testing.

Hickey then argues that the results from the hospital's testing should also be suppressed because the hospital was acting as the agent of the police when Hickey's blood sample was drawn. At the time Hickey was transported to the hospital, it was for medical treatment, not blood alcohol content analysis. The medical technician delayed the drawing of any blood until the physician on duty ordered a blood sample for medical purposes. Hickey signed the consent to treatment form required by the hospital. The technician then drew blood from Hickey only once and then divided it into two tubes—one for the police and one for the hospital. The hospital tested its sample and the state trooper submitted the sample given to him to the KBI laboratories for testing.

In *State v. Gordon*, 219 Kan. 643, 549 P.2d 886 (1976), the court considered the admissibility of a blood test when the blood was drawn from an unconscious person by the deputy district coroner prior to such person's arrest. The court suppressed the test results, holding the deputy district coroner was acting as an agent of the state when he ordered the blood sample taken for the sole purpose of testing for alcohol. These are not the facts before this court. The blood in question was ordered drawn by a physician in the regular course of hospital procedure to determine the appropriate treatment for the patient. The blood testing done by the hospital was relevant to the medical history, diagnosis, and treatment of Hickey. It was a part of the regular course of hospital business. See *Wadena v. Bush*, 305 Minn. 134, 232 N.W.2d 753 (1975).

Such testing and record not having been made upon the request of a law enforcement officer is not subject to the proscription of oral and written notice under K.S.A. 1985 Supp. 8-1001(f)(1). There was no agency between the drawing technician, the hospital, and the arresting trooper. The court in *State v. Gordon* stated: "The Fourth Amendment prohibition against unreasonable searches and seizures applies solely to governmental action, not to the acts of private individuals. *Burdeau v. McDowell*, 245 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574 (1921)." 219 Kan. at 648. The trial court did not err in admitting the results of the hospital tests for blood alcohol concentration.

*State v. Woodman*, 12 Kan. App. 2d at 118-19, held that driving while under the influence, K.S.A. 1987 Supp. 8-1567, was a

lesser included offense under aggravated vehicular homicide, K.S.A. 1987 Supp. 21-3405a. If convicted of aggravated vehicular homicide, conviction for driving while intoxicated is prohibited as multiplicitous under K.S.A. 1987 Supp. 21-3107(2)(d). The State concedes *Woodman* controls.

Hickey's conviction for speeding is affirmed, his conviction for driving under the influence of alcohol is reversed, his six convictions for aggravated vehicular homicide are reversed, and the case is remanded for a new trial.