(11 P.3d 59)
No. 82,031

GREGORY K. FORD, *Appellee,* v. LANDOLL CORPORATION and NATIONAL UNION FIRE INSURANCE COMPANY OF NEW YORK, *Appellants.*

Opinion filed February 11, 2000.

*Douglas M. Greenwald* and *Frederick J. Greenbaum,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellant.

*John J. Bryan,* of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, for appellee.

Before JUSTICE LOCKETT, presiding, MICHAEL F. POWERS, District Judge, assigned, and ROBERT G. JONES, District Judge Retired, assigned.

POWERS, J.: Employer and its insurance carrier appeal an order of the Workers Compensation Board (Board) awarding claimant permanent partial disability benefits and 50 percent work disability.

On November 15, 1995, Gregory K. Ford sustained a back injury which arose out of and in the course of his employment with Lan-

doll Corporation. Ford continued to work light-duty job assignments until January 11, 1996, when he was taken off work by treating physicians. At that time, he applied for and received temporary total disability benefits under the Kansas Workers Compensation Act. The temporary total disability benefits continued for approximately 11 weeks. Ford then applied for and received unemployment compensation. Ford sustained a nonwork related cervical herniation in January 1997.

On July 22, 1997, the administrative law judge (ALJ) found that Ford had sustained a 3.5 percent functional impairment, and he had a 100 percent wage loss and a 0 percent task loss for a 50 percent work disability. The ALJ awarded Ford compensation for permanent partial disability.

Landoll requested review by the Board. The Board found that Ford had sustained a 9 percent whole body functional impairment due to his work-related back injury and affirmed the ALJ's finding of a permanent partial disability.

Landoll appealed.

## REFUSAL OF OFFER OF ACCOMMODATED EMPLOYMENT

There is no dispute that Ford's back injury of November 15, 1995, was a compensable injury, and Landoll does not contest the finding of a 9 percent functional disability. The question is whether Landoll's offer of an accommodated position at a comparable wage triggers the statutory presumption of no work disability.

Findings supported by substantial evidence will be upheld by an appellate court even though evidence in the record would have supported contrary findings. *Shields v. J. E. Dunn Constr. Co.*, 24 Kan. App. 2d 382, 385, 946 P.2d 94 (1997). Substantial competent evidence is evidence possessing something of substance and relevant consequence, and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved. *Depew v. NCR Engineering & Manufacturing*, 263 Kan. 15, 26, 947 P.2d 1 (1997). Whether the findings of fact by the Board are supported by substantial competent evidence is a question of law. *Roberts v.*

*J.C. Penney Co.*, 263 Kan. 270, 274, 949 P.2d 613 (1997). The appellate court will not reweigh evidence or evaluate witnesses' credibility. *Bradford v. Boeing Military Airplanes*, 22 Kan. App. 2d 868, 871, 924 P.2d 1263, *rev. denied* 261 Kan. 1084 (1996).

Regarding Ford's refusal to accept Landoll's accommodated position, the ALJ found:

"The Respondent never offered to return the Claimant to work until April of 1997. [Citation omitted.] By this time the Claimant had moved away from Marysville, where the Respondent's business is located, to Haddam, Kansas. [Citation omitted.] Also by this time the Claimant's vehicle had stopped working and he was without the funds for repairs or to procure another vehicle. . . .

. . . .

The Court finds that Respondent took an unusual amount of time in offering accommodated employment to the Claimant. In that period of time the Claimant moved to Haddam where he could live rent free. Due to his lack of transportation, which came about through no fault of his, the Claimant was in no position to accept the job offer when it was finally made in April of 1997. The Respondent cannot expect its injured employees to neglect their personal welfare and remain within walking distance of its plant on the hope that someday an offer of accommodated work will be made. It was entirely reasonable for the Claimant to make the move that he did. Even if the Claimant had no cervical problem prohibiting him from working his transportation problem still existed and he would still be unable to report to work."

Upon review of the case, the Board found that because of the financial problems resulting from being unable to work, Ford moved from Marysville, Kansas, where he had worked for Landoll, to Haddam, Kansas, where he could live rent free. The Board noted that Haddam is approximately 60 miles from Marysville.

Landoll argues that the Board's affirmance of the ALJ is incorrect as a matter of law. Landoll contends that its offer of an accommodated position and Ford's subsequent refusal to accept the position trigger the statutory presumption of no work disability and preclude a work disability award.

Ford argues that the issue is a question of fact, and this court must affirm the Board if there is substantial evidence to support the Board's finding of a work disability.

In *Tharp v. Eaton Corp.*, 23 Kan. App. 2d 895, 940 P.2d 66 (1997), this court reviewed the Board's affirmance of the ALJ's award of a work disability where the employer had offered to the

worker what it considered to be an accommodated position. This court affirmed the Board's order by determining that there was substantial evidence to support the Board's findings. 23 Kan. App. 2d at 896-98. The Board's order in this case will be reviewed accordingly.

K.S.A. 44-510e(a) governs the award of permanent partial general disability benefits. K.S.A. 44-510e(a) provides, in part:

"An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

Prior to 1993, this statute set forth a presumption against disability benefits if an employee engaged in work for wages comparable to the gross weekly wage earned by the employee at the time of the injury. Although the language in the statute has changed, the law surrounding the presumption has not. *Swickard v. Meadowbrook Manor*, 26 Kan. App. 2d 144, 148, 979 P.2d 1256 (1999).

In *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), this court considered whether the presumption of no work disability applied to cases where the worker has the ability to engage in work at a comparable wage but does not do so. This court found that in such cases the presumption of no work disability applies, and the employee is precluded from receiving work disability compensation. The court stated: "[I]t would be unreasonable . . . to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system." 20 Kan. App. 2d at 284.

In *Tharp*, this court reviewed the Board's finding that Tharp's employer, Eaton Corporation, had made an insufficient attempt at accommodation where Eaton had accommodated Tharp by creating a job for her where she was required to sit in a room by herself and wait for someone to give her something to do. Tharp quit the job after only a month because she claimed it was humiliating for her to constantly have to ask for work and because she did not believe she was doing the company any service. 23 Kan.

App. 2d at 896. We affirmed the Board's order, finding substantial competent evidence in the record to support the Board's finding that the attempt by Tharp's employer to place Tharp in an accommodated job was not sufficient to invoke the statutory presumption of no work disability.

Landoll relies heavily on the recent case of *Swickard*, 26 Kan. App. 2d 144, where this court considered whether the employer's offer of an accommodated position established the presumption of no work disability where the accommodated position was on a different shift than the worker formerly worked and the worker had no transportation to go to work on that shift. The ALJ had concluded that the worker failed to meet her burden to prove the employer's offer of an accommodated position was unreasonable or not made in good faith. This court affirmed, stating that the worker's reason for not taking the proffered accommodated position was her transportation problem, which had nothing to do with her physical ability to perform the work. 26 Kan. App. 2d at 150.

This case is distinguishable from *Swickard*. Whether transportation is an issue depends on the facts; it is not a matter of law. In *Swickard*, there was no factual finding that the employer had contributed to the worker's transportation problem or had dealt with the worker in bad faith. Here, the ALJ found that Landoll had taken an "unusual amount of time in offering accommodated employment" and in that period of time Ford had moved to Haddam where he could live rent free. Under the circumstances, the ALJ found it reasonable for Ford to have moved outside Marysville. The ALJ's statement that Landoll could not "expect its injured employees to neglect their personal welfare and remain within walking distance of its plant on the hope that someday an offer of accommodated work will be made" clearly articulated the ALJ's view that Landoll had acted unreasonably in delaying an offer of accommodated work.

Landoll disputes that it delayed offering Ford an accommodated position. Landoll argues that, even though the offer of an accommodated position came more than a year after Ford's injury, it was timely offered in view of the fact that Ford did not receive work restrictions from his physician until January 1997.

Landoll's argument does not take into account that on April 1, 1996, Landoll's evaluating doctor examined Ford and placed him on medium to medium/heavy work restrictions and found Ford to be at maximum medical improvement, and that in May 1996, when Ford applied for unemployment compensation, Landoll stated that it had no work available for Ford. This is substantial competent evidence to support the Board's finding.

We hold that where the employer has offered appropriately accommodated work to an injured worker, and the worker does not accept it due to transportation problems, the statutory presumption of no work disability is not invoked where the employer has contributed to the workers transportation problems or dealt with the worker in bad faith.

## WAGE LOSS SUPPORTED BY EVIDENCE

In addition to Ford's transportation problems, Ford was unable to find work because he had, after leaving Landoll's employment, sustained a nonwork-related cervical injury which further limited his physical ability to work. The ALJ found that the cervical injury was of no consequence to the finding of a work disability because "[e]ven if the Claimant had no cervical problem prohibiting him from working his transportation problem still existed and he would still be unable to report to work."

The Board found that since last working for Landoll, Ford had been unable to find employment. The Board pointed to testimony that in July 1996, Ford had applied for work in Marysville and Belleville, Kansas, as well as in Fairbury, Nebraska. The Board concluded that, considering the challenges created by Ford's lack of transportation and medical limitations, Ford had made a good faith effort to find appropriate employment following his work-related accident.

The standard of review is substantial competent evidence to support the Board's finding. See *Tharp*, 23 Kan. App. 2d at 896.

Evidence in the record supporting the Board's finding includes testimony from Ford that he had sought reemployment from Landoll in May 1996; he had applied for and received vocational rehabilitation assistance; he had applied for work in most of the stores

in Washington County, including the library and clothing stores such as Jeeters and JC Penneys; and he had looked for work in Fairbury, Nebraska, Belleville, Kansas, Marysville, Kansas, and all the surrounding towns in the area where he lived.

The evidence is competent and substantial to support the Board's finding.

Affirmed.