(67 P.3d 173)

No. 89,239

DENNIS FOOS, *Appellee*, v. TERMINIX and ZURICH AMERICA INSURANCE CO., *Appellants.*

Opinion filed April 25, 2003. ██

*Rex W. Henoch*, of Dorothy & Henoch, L.L.C., of Lenexa, for the appellants.

*Rachel Mackey*, of Law Office of Rachel Mackey, of Topeka, and *Roger D. Fincher*, of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, for the appellee.

Before RULON, C.J., PIERRON and MARQUARDT, JJ.

PIERRON, J.: Terminix and Zurich American Insurance Company (Terminix) appeal the decision of the Workers Compensation Board (Board) that Dennis Foos was entitled to an award of benefits following a one-vehicle accident. Terminix argues the Board incorrectly found that a blood test showing Foos was intoxicated was inadmissible.

The parties, for the most part, do not dispute the facts. The issue is whether certain facts are admissible in the worker compensation proceedings.

Foos worked for Terminix as a pest control technician. Foos lived in Solomon and drove a Terminix truck to service commercial and residential accounts in the Manhattan-Junction City area. On May 2, 1997, Foos reported to the Terminix office in Topeka to attend a safety meeting at 8 a.m. After the meeting, he drove to Manhattan and serviced at least two accounts, one from 10:30 a.m. to 10:45 a.m. and the other from 10:45 a.m to 11:05 a.m. For the next hour, Foos participated in a charity "hole-in-one" contest in Manhattan. Then, Foos drove to McDonald's in Manhattan at approximately noon and ate lunch. Foos claims he has no memory of what happened after that until he awoke the next day at the University of Kansas Medical Center (Medical Center).

There is no evidence in the record to account for Foos' activities between the time he finished lunch until approximately 7:30 p.m. At that time, Foos was traveling westbound on I-70 when his truck left the roadway and struck two guardrails. Foos was ejected from the truck. He sustained severe injuries and was transported by ambulance to the Geary Community Hospital. Medical staff stabilized Foos and then transferred him by Lifestar to the Medical Center, where he was admitted as a trauma patient. Upon his arrival at the Medical Center, emergency room staff performed standard trauma intake procedures, including a blood alcohol test. A blood sample was taken at approximately 11:10 p.m. and revealed that Foos had a blood alcohol concentration of .134.

In the emergency room, a nurse found Foos to be oriented to person, place, and time, and had him sign a surgery consent form at 12:50 a.m. on May 3, 1997. As part of the preoperative history, Foos stated that he had taken cocaine 1 week before and had consumed nine beers and shots on the afternoon/evening in question. He also signed a consent form for anesthesia at 1:10 a.m. Foos had surgery on his left arm.

Foos filed for benefits under the Kansas Workers Compensation Act (WCA). On November 26, 1997, the Board affirmed a preliminary hearing order finding that Foos suffered an accidental injury arising out of and in the course of his employment with Terminix. The Board found that pursuant to *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 899 P.2d 1058 (1995), even if Foos deviated from his employment for a substantial period of time, he returned to his employment once he was on the direct route back to his home in Solomon.

Terminix challenged Foos' entitlement to workers compensation benefits based on the evidence that he was intoxicated at the time of the accident. The administrative law judge (ALJ) applied K.S.A. 44-501(d)(2) and found Foos was impaired due to alcohol use, that his use of alcohol contributed to his accident, and, therefore, Terminix was not liable under the WCA for Foos' injuries. The ALJ held Terminix had met its burden under K.S.A. 44-501(d)(2) for admissibility of the results of Foos' blood alcohol test.

The Board reviewed the ALJ's decision and held the results of the blood alcohol test were inadmissible. The Board based its decision on the ALJ's finding that before the results of a chemical test can be admitted under K.S.A. 44-501(d)(2), there must be "probable cause to believe the employee used, had possession of, or was impaired by the drug or alcohol while working" and that "the test sample was collected at a time contemporaneous with the events establishing probable cause." The Board found there was no mention of alcohol or odor of alcohol until approximately 1:10 a.m. on May 3, 1997, and the blood sample was taken several hours earlier, at approximately 11:10 a.m. on May 2, 1997.

The Board held that K.S.A. 44-501(d)(2) requires probable cause to be present before a blood sample may be obtained and there are no exceptions to this requirement even where the sample is taken in the normal course of medical treatment. Consequently, the Board found the blood test results and any expert testimony regarding them were inadmissible. The Board disallowed all of the medical experts' testimony since the experts relied on the blood test results. The Board also found that the remaining evidence of Foos' statement, that he had consumed nine beers and shots, was insufficient to prove that he was impaired and that his impairment caused or contributed to the accident/injury. A dissenting Board member concluded the blood test results were admissible as taken in the regular course of hospital business.

Terminix first argues the Board erred in concluding that Foos sustained personal injury by accident arising out of and in the course of his employment.

The Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, provides the grounds upon which relief may be granted in appeals of workers compensation awards entered on or after October 1, 1993. See K.S.A. 2001 Supp. 44-556(a).

"The court shall grant relief only if it determines any one or more of the following:

. . . .

"(4) the agency has erroneously interpreted or applied the law;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole . . . ." K.S.A. 77-621(c).

The question of whether there has been an accidental injury arising out of and in the course of employment is a question of fact, and its determination will not be disturbed by an appellate court where there is substantial evidence to sustain it. *Harris v. Bethany Medical Center*, 21 Kan. App. 2d 804, Syl. ¶ 1, 909 P.2d 657 (1995). Although this court may substitute its judgment for that of the Board on questions of law, on disputed issues of fact an appellate court must view the evidence in the light most favorable to the prevailing party and determine if there is substantial competent evidence to support the Board's determinations. *Brobst v. Brighten Place North*, 24 Kan. App. 2d 766, 770, 955 P.2d 1315 (1997).

In employment covered by workers compensation laws, an employer must compensate an employee for personal injuries incurred by the employee through accidents arising out of and in the course of employment. *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, Syl. ¶ 2, 899 P.2d 1058 (1995); see K.S.A. 44-501(a). To affirm the Board's decision on this issue, this court must find substantial competent evidence to support the conclusion that even if Foos had deviated from his employment for a substantial period of time, he returned to his employment once he was on the direct route back to his home in Solomon.

"The two phrases arising 'out of' and 'in the course of' employment, as used in our Workers Compensation Act, K.S.A. 44-501 *et seq.*, have separate and distinct meanings. . . . The phrase 'out of' employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. . . . [A]n injury arises 'out of' employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase 'in the course of' employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. [Citations omitted.]" *Kindel*, 258 Kan. at 278.

Terminix agrees with the Board's conclusion that Foos substantially deviated from his employment when he participated in the

"hole-in-one" competition and then consumed nine beers and shots during a time period of approximately 7 hours when no one knows what happened. Foos does not challenge this conclusion. On the other hand, Terminix argues the Board's finding that Foos returned to his employment as he traveled home prior to the accident was based on pure assumption, which cannot possibly constitute substantial competent evidence to uphold the decision. Foos contends the Board correctly held he had returned to his employment prior to the accident.

Foos had the burden of proof in this case to prove his entitlement to workers compensation benefits. K.S.A. 2001 Supp. 44-508(g) provides that Foos' burden was "to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record."

An employee is within the course of employment for workers compensation purposes, in spite of the going and coming rule, if he or she is traveling between places and the employment requires such traveling. In *Messenger v. Sage Drilling Co.*, 9 Kan. App. 2d 435, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984), we decided that an employee's death in a truck accident which occurred while he was on the way home from a distant oil and gas drilling site was covered under the Act. Citing *Bell v. Allison Drilling Co.*, 175 Kan. 441, 264 P.2d 1069 (1953), and *Newman v. Bennett*, 212 Kan. 562, 512 P.2d 497 (1973), we found that travel to and from distant drilling sites was an integral and necessary part of the employment which benefitted the employer. *Messenger*, 9 Kan. App. 2d at 440.

A case directly on point is *Kindel*, 258 Kan. 272, where two construction workers traveled in a company truck to a construction job site in Sabetha several hours from their home in Salina. After a long day's work, the two workers stopped at a striptease bar in Topeka for 4 hours and became inebriated. As they traveled home on I-70, the truck overturned in a ditch and Kindel, the passenger, was killed. The driver had amnesia and could not recall any events after they stopped at the bar. Subsequent tests determined that the driver and Kindel had blood alcohol levels of .225 and .26 respectively.

Despite the deviation from employment to the bar, the *Kindel* court found that Kindel's injuries arose out of and in the course of his employment with Ferco. Even with the driver's amnesia as to the events, the court found Kindel was killed after the two resumed their route home on I-70. The court held:

"We note that the workers compensation law does not fix an arbitrary limit on the number of hours of deviation, which may be terminated with travel coverage resumed. Whether there was a deviation, and if that deviation had terminated, is a question of fact to be determined by the administrative law judge or the Workers Compensation Board. Under our standard of review, we find that the Board did not act unreasonably, arbitrarily, or capriciously and there is substantial evidence to support the Board's conclusion that the fatal injury occurred in the course of Kindel's employment." 258 Kan. at 284-85.

The decision in *Kindel* relied in part upon *Angleton v. Starkan, Inc.*, 250 Kan. 711, 828 P.2d 933 (1992). In *Angleton,* the court granted coverage under the Act to the driver of a cattle truck who was killed after being lured to the side of the road by hijackers who invited him to smoke marijuana with them.

In challenging the Board's holding, Terminix argues the Board *assumed* Foos was either returning home or going to a customer service call before heading home at the time of the accident. Terminix contends that just because Foos was traveling west on I-70, this does not mean he was headed home. Terminix suggests I-70 is a direct route to a multitude of places and the Board's assumption does not provide substantial competent evidence to support its decision.

We find that travel was clearly a necessary and integral part of Foos' employment with Terminix. He drove a company truck provided by Terminix. He serviced customers in the Manhattan and Junction City area, which was approximately 50 miles from his home in Solomon and nearly 100 miles from Terminix's base office in Topeka. On the day in question, Foos traveled from his home in Solomon to Topeka and then to Manhattan to service several clients. At the time of the accident, Foos was traveling on a direct route to his home in Solomon. Although there is no direct evidence as to Foos' destination at the time of the accident, it was the duty

of the ALJ and Board to determine whether Foos had returned to his employment once he was on a direct route home.

Foos was injured while engaging in an activity contemplated by Terminix while traveling on a public interstate highway. Findings supported by substantial evidence will be upheld by an appellate court even though evidence in the record would have supported contrary findings. *Ford v. Landoll Corp.*, 28 Kan. App. 2d 1, 2, 11 P.3d 59 (2000). The Board's finding was supported by substantial competent evidence. It was a reasonable interpretation of the evidence.

Next, Terminix argues the Board erred by excluding the blood test results showing that Foos was intoxicated at the time of the accident.

The Board's decision involves an interpretation of K.S.A. 44-501(d)(2). Issues involving interpretation of statutory provisions are questions of law over which appellate court's have unlimited review. While an appellate court gives deference to the Board's interpretation of the law, if such interpretation is applied erroneously, the court may grant relief. *Pruter v. Larned State Hospital*, 271 Kan. 865, 868, 26 P.3d 666 (2001).

K.S.A. 44-501(d)(2) allows an "intoxication exception" to providing benefits under the WCA:

"The employer shall not be liable under the workers compensation act where the injury, disability or death was contributed to by the employee's use or consumption of alcohol. . . . It shall be conclusively presumed that the employee was impaired due to alcohol or drugs if it is shown that at the time of the injury that the employee had an alcohol concentration of .04 or more. . . . An employee's refusal to submit to a chemical test shall not be admissible evidence to prove impairment unless there was probable cause to believe that the employee used, possessed or was impaired by a drug or alcohol while working. The results of a chemical test shall not be admissible evidence to prove impairment unless the following conditions were met:

(A) There was probable cause to believe that the employee used, had possession of, or was impaired by the drug or alcohol while working;

(B) the test sample was collected at a time contemporaneous with the events establishing probable cause;

(C) the collecting and labeling of the test sample was performed by or under the supervision of a licensed health care professional;

(D) the test was performed by a laboratory approved by the United States department of health and human services or licensed by the department of health and environment, except that a blood sample may be tested for alcohol content by a laboratory commonly used for that purpose by state law enforcement agencies;

(E) the test was confirmed by gas chromatography-mass spectroscopy or other comparably reliable analytical method, except that no such confirmation is required for a blood alcohol sample; and

(F) the foundation evidence must establish, beyond a reasonable doubt, that the test results were from the sample taken from the employee."

The Board focused its exclusion of Foos' blood test based on K.S.A. 44-501(d)(2)(A) & (B). It held that K.S.A. 44-501(d)(2)(A) required probable cause to be present before a blood sample is obtained and there were no exceptions to this requirement even where the sample was taken in the normal course of medical treatment. We disagree.

The blood test performed on Foos at the Medical Center was done in the normal course of the hospital's business in preparation for Foos' medical treatment. The Board's decision to exclude that evidence is contrary to the established law where blood testing is done by the hospital for the purposes of obtaining relevant medical diagnoses and treatment information.

In *State v. Parson*, 226 Kan. 491, 601 P.2d 680 (1979), the defendant was convicted of involuntary manslaughter stemming from an automobile accident. He appealed, contending that the results of a blood alcohol test were improperly received in evidence. Parson had been taken from the accident scene to a Wichita hospital. He was unconscious. The record does not indicate that he was arrested, that he was given the option of refusing the test, or that the test was taken under the direction of a police officer. Instead, an emergency room physician ordered several tests, including a blood alcohol test that showed Parson's blood alcohol level was .14, indicating intoxication pursuant to K.S.A. 8-1005(b). While the evidence was not attacked on the ground of lack of probable cause, the court found the results of the tests were properly admitted into evidence. 226 Kan. at 495.

In *State v. Hickey*, 12 Kan. App. 2d 781, 757 P.2d 735, *rev. denied*, 243 Kan. 781 (1988), the defendant caused a traffic acci-

dent killing six people. The defendant suffered minor injuries and was taken to the hospital for blood alcohol testing and medical examination. The defendant gave one blood sample, and it was divided into two samples, one for police testing and the other for testing to determine his medical condition. As part of the hospital protocol, the hospital's sample was also tested for alcohol content.

Hickey moved to suppress the results of both blood tests on the ground the police failed to give oral and written notices under K.S.A. 1985 Supp. 8-1001(f)(1). The trial court found the results of the police test were inadmissible based on K.S.A. 1985 Supp. 8-1001(f)(1), but that the hospital's results were not subject to the same notice requirements. The *Hickey* court agreed:

"Such testing and record not having been made upon the request of a law enforcement officer is not subject to the proscription of oral and written notice under K.S.A.1985 Supp. 8-1001(f)(1). There was no agency between the drawing technician, the hospital, and the arresting trooper. The court in *State v. Gordon* stated: 'The Fourth Amendment prohibition against unreasonable searches and seizures applies solely to governmental action, not to the acts of private individuals. *Burdeau v. McDowell*, 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574 (1921).' 219 Kan. at 648. The trial court did not err in admitting the results of the hospital tests for blood alcohol concentration." 12 Kan. App. 2d at 786.

We believe the instant case is closely analagous to *Hickey* and should be controlled by it.

We also do not believe the delay in obtaining the blood test defeated its admissibility under K.S.A. 44-501(d)(2)(B). Delays prior to the administration of a blood test, at least in the criminal context, appear to be quite common, often due to the length of time involved in transporting the defendant to a medical facility.

In dealing with this "delay problem" courts generally find that if a defendant is placed in custody immediately and remains under the control of officers or others and consumes no more alcohol before the test is given, a conviction may be based upon the results of the delayed testing along with expert testimony estimating the blood alcohol level at the time of the accident. See, *e.g.*, *Stephens v. State*, 127 Ga. App. 416, 193 S.E.2d 870 (1972); *State v. Bradley*, 578 P.2d 1267 (Utah 1978) (blood test given 4 hours after accident was admissible along with expert testimony on how to extrapolate

the burn-off rate); *State v. Carter*, 142 Vt. 588, 458 A.2d 1112 (1983); see also *Ullman v. Overnite Transp. Co.*, 563 F.2d 152 (5th Cir. 1977) (personal injury case; no indication of intervening drinking or unsupervised period; permissible to extrapolate back; objections go to weight)

Under the facts of this case, the Board erroneously interpreted K.S.A. 44-501(d)(2) to require a finding of probable cause prior to the withdrawal of blood where the test is performed in the ordinary course of medical treatment. The test results are admissible in a workers compensation proceeding to determine whether an employee's injury was contributed to by the employee's use of alcohol or drugs. In this case, Foos' blood alcohol level was .134, well beyond the allowable limits contained in K.S.A. 44-501(d)(2) of under .04. When Foos' blood test results and the ensuing presumption of impairment under K.S.A. 44-501(d)(2) are considered with all the expert testimony, we find Terminix established that Foos was impaired at the time of his accident and that his impairment caused or contributed to his injuries. Foos is not entitled to benefits under the WCA.

Affirmed in part and reversed in part.