(909 P.2d 657)

No. 73,308

THERESA HARRIS, *Claimant/Appellant*, v. BETHANY MEDICAL CENTER, *Respondent/Appellee*, and SELF-INSURED.

Opinion filed November 9, 1995.

*Steven D. Treaster*, of Overland Park, for appellant.

*Robert L. Kennedy*, of Holbrook, Heaven & Fay, P.A., of Kansas City, for appellee.

Before PIERRON, P.J., RULON and GREEN, JJ.

RULON, J.: Theresa Harris, claimant, appeals from the order of the Appeals Board for the Kansas Division of Workers Compensation (Board) which denied her workers compensation claim against Bethany Medical Center (Bethany). We reverse and remand the cause for further proceedings.

We must decide if the Board erred when finding claimant's injuries did not arise out of claimant's employment. During oral argument, claimant abandoned her challenge to the constitutionality of the Board.

## FACTS

The following facts are essentially undisputed:

Claimant worked as a dietary aide at Bethany. Douglas Kirkwood also worked at Bethany as a cook. On December 17, 1992, claimant was taking a food tray to a patient. While she was waiting for an elevator, Kirkwood approached claimant and, without provocation, struck her in the face. The parties stipulated that claimant has a 5% functional impairment as a result of this incident.

Claimant testified that prior to this incident she had experienced problems with Kirkwood and had reported them to her supervisors. Claimant further testified that the prior problems consisted mostly of name calling, but that on one occasion Kirkwood had spilled hot soup onto her. According to claimant, when her supervisors did nothing to stop Kirkwood's behavior, she filed a police report against him. Furthermore, claimant testified that her problems with Kirkwood were due to the jealousy of another woman employee—but claimant never associated with Kirkwood outside of work.

This record shows that Kirkwood had also verbally abused other employees at Bethany. This fact was corroborated by claimant's immediate supervisor, who testified that on one occasion hospital security had to be called during an altercation between Kirkwood and another employee.

The Administrative Law Judge (ALJ) awarded claimant compensation. The Board reversed the award, finding the assault was a result of a personal dispute between claimant and Kirkwood, and thus claimant's injuries did not arise out of her employment.

## ARISING OUT OF EMPLOYMENT

The sole issue on appeal is whether claimant's injuries arose out of her employment. K.S.A. 44-501(a) requires that an injury must arise out of the employee's employment before that injury is compensable.

The question of whether there has been an accidental injury arising out of and in the course of employment is a question of fact and its determination will not be disturbed by an appellate court where there is substantial evidence to sustain it. See *Carter v. Al-*

*pha Kappa Lambda Fraternity*, 197 Kan. 374, 376, 417 P.2d 137 (1966).

Both the ALJ and the Board found that claimant had encountered problems with Kirkwood prior to the incident giving rise to her injuries. Each found that claimant had filed a police report with the Kansas City, Kansas, police department and had twice attempted to report her problems to her supervisors.

The ALJ, however, awarded claimant compensation, finding that her injury "arose out of the nature, conditions, obligations and incidents" of her employment. The ALJ found that Bethany "had knowledge of [Kirkwood's] behavior and took no steps to ensure other employees['] safety"; therefore, Bethany "acquiesced in the inappropriate behavior."

The Board disagreed with the above finding and instead found the ALJ's decision was based on the foreseeability test. The Board, however, concluded that Kansas has abolished the foreseeability test and under current case law

"[f]oreseeability should not be relevant to either limit or enlarge the right to compensation. The controlling factor is whether there is a causal connection between the work and the injury. An assault may arise from the employment in two circumstances. First, as with horseplay, there may be circumstances where, because the employer has condoned certain behavior, the assault becomes so intertwined with the work activities that the assault is considered to arise out of the work. Foreseeable assaults may overlap with compensable assaults, but foreseeability should not be the controlling factor, the connection with work should be. Second, injury by assault will also be compensable where, as in both *Brannum* [*v. Spring Lakes County Club, Inc.*, 203 Kan. 658, 455 P.2d 546 (1969),] and *Springston* [*v. IML Freight, Inc.*, 10 Kan. App. 2d 501, 704 P.2d 394, *rev. denied* 238 Kan. 878 (1985)], the assault results from an argument about work."

In *Brannum*, an employee who was disgruntled over his work assignment shot his supervisor. 203 Kan. at 659-60. The *Brannum* court reviewed a large body of cases applying the so-called *Peavy* rule, which provides: "[A]n employee intentionally injured by another employee cannot recover under the workmen's compensation act unless the wrongful conduct has become habitual and the habit is known to the employer." *Peavy v. Contracting Co.*, 112 Kan. 637, 639, 211 Pac. 1113 (1923).

The *Brannum* court noted several classes of cases had applied the *Peavy* rule. Such cases involved incidents where injuries resulted from horseplay, where injuries resulted from personal animosities between employees, and where injuries resulted from arguments in which working requirements or conditions were factors leading up to the altercations. See 203 Kan. at 661-62.

After reviewing the above cases and the rationale supporting the *Peavy* rule, the *Brannum* court held that foreseeability "should be irrelevant as a limiting factor in determining liability for workmen's compensation which is based on work connection . . . and we discern no logical reason for requiring it in a work-connected injury." 203 Kan. at 666. The court then overruled those cases where compensation was denied based on the *Peavy* rule. 203 Kan. at 668. In each of these overruled cases, as in *Brannum*, the injuries resulted from arguments in which working requirements or conditions were factors leading up to the assault. See 203 Kan. at 663.

Thus, *Brannum* modified the *Peavy* rule as that rule *limited* liability for compensation, but not as such rule *enlarged* liability for compensation, such as cases involving horseplay and personal animosities. The Board, however, concluded that *Springston* dissolved what *Brannum* may have left of the foreseeability rule.

In *Springston*, a worker's injuries resulted from a quarrel "over who had the right to drive a particular truck." The parties disagreed over company policy concerning priority among drivers. 10 Kan. App. 2d at 501. The *Springston* court correctly concluded that *Brannum* controlled and the injuries were compensable. 10 Kan. App. 2d at 503. The court paraphrased the *Brannum* holding as

"reject[ing] the application of the tort concepts of foreseeability and negligence which had been applied in earlier cases and held that an injury by assault arises 'out of' employment when it arises out of the nature, conditions, obligations and incidents of the employment in the same manner as any other injury." 10 Kan. App. 2d at 502-03.

The Board interpreted *Springston* to mean that "foreseeability should not be relevant to either limit or enlarge the right to compensation." We believe the Board construed *Springston* too broadly. *Brannum* directly controlled *Springston* because the injury in *Springston* resulted from an argument in which working

requirements or conditions were factors. *Brannum* left intact those cases applying the *Peavy* rule to other nonwork altercations by co-employees. Indeed, the Board recognized this when it stated that "as with horseplay, there may be circumstances where, because the employer has condoned certain behavior, the assault becomes so intertwined with the work activities that the assault is considered to arise out of the work."

Here, we do not have a situation where the claimed injuries resulted from an argument in which working requirements or conditions were factors, nor do we have a case of horseplay. This leaves us with that class of cases identified in *Brannum* where the injuries resulted from personal animosities between the employees. Such reported cases in Kansas are sparse. Our research reveals only two: *Romerez v. Swift & Co.*, 106 Kan. 844, 189 Pac. 923 (1920), and *Carter v. Alpha Kappa Lamda Fraternity*, 197 Kan. 374. *Romerez* was decided before *Peavy*, and the *Peavy* court relied on it. See *Peavy*, 112 Kan. at 639. *Carter* applied the *Peavy* rule. See 197 Kan. at 376. Both cases were mentioned in *Brannum*, but the *Brannum* court did not expressly overrule either.

In *Romerez*, four employees, who were members of two different ethnic groups, engaged in a confrontation resulting in the death of one of the employees. The court discussed the foreseeability doctrine and noted that "it is impossible to say that this situation was one reasonably to be expected by the employer." 106 Kan. at 847. The *Romerez* court, however, also emphasized the fact that the deceased employee "stepped aside from his work and left his task to settle this matter of personal spleen. It cannot be held that in so doing, he was in the line of his employment, or that the regrettable result arose out of such employment." 106 Kan. at 847.

In *Carter*, the two employees had been engaging in horseplay, an activity that the employees did regularly and of which the employer was aware. That horseplay, however, escalated, ending in an assault on the claimant by the other employee. The *Carter* court held that the trier of fact found that the horseplay had ended and that the injury was a result of an assault. Such injuries, the court concluded, are not compensable "unless the wrongful conduct has

become habitual and the habit known to the employer." 197 Kan. at 376.

The *Brannum* court summarized the significant facts of *Romerez* as follows: "[T]here is no indication the assault occurred other than from reasons purely personal to the participants. Moreover, it was shown the deceased workman 'stepped aside from his work and left his task . . . .' " 203 Kan. at 661. *Brannum* merely mentioned *Carter*, stating: "Although not directly pertinent here, other statements of the *Peavy* rule could be cited, the most recent being in *Carter* . . . ." 203 Kan. at 663. The court did not reveal why *Carter* was not directly pertinent; however, a logical inference might be because *Carter* did not deal with injuries resulting from working requirements or conditions.

Here, there was an incident that occurred "from reasons purely personal to the participants." As the Board said, however, claimant's injuries did not result from personal arguments "imported" from outside work into the workplace. Rather, this personal dispute "arose from the association between the claimant and co-worker at work."

In this case, we do not have a claimant who "stepped aside from [her] work and left [her] task." Rather, we have a claimant who was engaged in her work and her task when she was unexpectedly assaulted by a co-employee.

Last, unlike both *Romerez* and *Carter*, we have a situation where the employer was made aware of the problems between claimant and Kirkwood.

The Board found that even if foreseeability is a factor, Bethany's lack of attention to the problem did not "rise to the level of condoning the activity." Further, the Board found that it is "claimant's burden to show that the harassment was so condoned as to become part of the work."

Assuming the *Peavy* rule is still applicable, such rule is that injuries resulting from an assault on one employee by another are not compensable unless "the wrongful conduct has become habitual and the habit is known to the employer." *Peavy*, 112 Kan. at 639. This is a lesser test than what the Board applied here.

In *Hallett v. McDowell & Sons*, 186 Kan. 813, 352 P.2d 946 (1960), our Supreme Court put forth an even less strict interpretation of the *Peavy* rule:

"[I]f an employee is assaulted by a fellow workman, whether in anger or in play, an injury so sustained does not arise 'out of the employment' and the employee is not entitled to compensation unless the employer had reason to anticipate that injury would result if the two continued to work together." 186 Kan. at 817.

We believe the Board incorrectly concluded the foreseeability test has been totally abrogated in Kansas. Both the ALJ and the Board found that claimant had notified her supervisors of Kirkwood's previous behavior and, consequently, Bethany knew of this dangerous conduct. Further, Bethany knew of problems that Kirkwood had caused with other employees (problems that had required calling security). No evidence, however, indicates that Kirkwood had ever physically attacked another employee. Claimant testified that Kirkwood intentionally bumped into her while she was carrying a tray of hot soup, but all other evidence indicates that Kirkwood only verbally abused other employees.

The Board found that claimant failed in her burden of showing that Kirkwood's conduct had become an incident of her employment. The Board, however, applied a greater test, *i.e.*, that the employer must condone the behavior. If what Bethany knew of Kirkwood's behavior was a sufficient indication that Kirkwood might become violent, then Bethany had reason to anticipate that injury might result to claimant if the two continued to work together.

We reverse and remand the cause to the Board for reconsideration.