(64 P.3d 440)

No. 88,150

RICHARD L. EVANS, Deceased, *Claimant/Appellee,* v. FRAKES TRUCKING, *Respondent/Appellant,* and KANSAS RISK SERVICES GROUP, *Insurance Carrier/Appellant.*

Opinion filed October 4, 2002.

*Douglas M. Greenwald,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants.

*John J. Bryan,* of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, for appellee.

Before BEIER, P.J., ELLIOTT and KNUDSON, JJ.

BEIER, J.: Respondent Frakes Trucking (Frakes) and its insurance carrier, Kansas Risk Services Group, appeal an award to the children of deceased claimant Richard Evans. They argue the Workers Compensation Board (Board) incorrectly defined the probable cause necessary for admission of a blood alcohol test result and, under that definition, arrived at the wrong conclusion on the merits of their alcohol impairment defense.

Evans was killed in a dump truck rollover accident while working for Frakes. On the morning of the accident, Evans arrived late for work. When he arrived, he apologized for his tardiness. Frakes' secretary didn't notice anything out of the ordinary concerning Evans' behavior, although he was less upbeat than usual. He walked normally as he left the office to get into his truck.

Evans drove his regularly assigned truck on the day of the accident. The truck's brakes and engine had recently been replaced, and Evans had reported no mechanical problems in the weeks before the accident. Evans proceeded to a quarry, picked up what was to be his first load for the day, and was driving on a two-lane highway when the accident occurred.

The Kansas Highway Patrol sergeant who investigated the scene determined the truck had dropped off the paved surface onto the unimproved shoulder of the highway. When Evans tried to bring the truck back onto the pavement, he apparently overcorrected and steered into the oncoming lane. He then turned right to bring the truck back into the correct lane, and the force of the turn caused the truck to roll over onto its left side and slide off the road. Evans

was declared dead at the scene; he had been ejected part of the way out of the truck cab. There were no witnesses to the accident.

The Highway Patrol lieutenant first on the scene noticed no smell of alcohol in the truck's cab or on Evans' body. No alcoholic beverage cans or bottles were found. There were no reports that Evans was driving inappropriately before the accident. The sergeant testified that nothing about the accident struck him as unusual; he speculated Evans may have been driving too fast for roadway conditions and misjudged a curve.

Frakes' secretary testified that a woman who identified herself as Evans' girlfriend called during the hours after the accident and said she and Evans had consumed alcohol the night before. Nothing in the record indicates any effort by Frakes to encourage the Highway Patrol to investigate this allegation regarding alcohol use.

An autopsy was performed. The examining physician detected no odor of alcohol while examining the body, but Evans' blood was tested as a matter of routine. The test results showed an alcohol concentration of .05 percent, and further testing confirmed that result.

Evans' three children filed for workers compensation benefits. The administrative law judge (ALJ) admitted evidence of the test results and refused to award benefits because Evans had been impaired by alcohol use and the impairment contributed to the accident under K.S.A. 1997 Supp. 44-501(d)(2). Evans' children sought review by the Board.

The Board rejected the ALJ's decision and found there was no probable cause to believe Evans used, had possession of, or was impaired by alcohol while working; therefore the tests results were inadmissible. This appeal follows.

K.S.A. 1997 Supp. 44-501(d)(2) sets the parameters of the alcohol impairment defense to a workers compensation claim:

"The employer shall not be liable under the workers compensation act where the injury, disability or death was contributed to by the employee's use or consumption of alcohol . . . . It shall be conclusively presumed that the employee was impaired due to alcohol if it is shown that at the time of the injury that the employee had an alcohol concentration of .04 or more. . . . *The results of a*

*chemical test shall not be admissible to prove impairment unless the following conditions were met:*

"(A) There was probable cause to believe that the employee used, had possession of, or was impaired by the drug or alcohol while working; . . . ." (Emphasis added.)

The ALJ determined the probable cause element of K.S.A. 1997 Supp. 44-501(d)(2)(A) was met and considered the test result and the secretary's hearsay testimony regarding the phone call from the woman who identified herself as Evans' girlfriend. When the presumption of impairment attached to a blood alcohol level of at least .04 percent was applied, the ALJ awarded no benefits.

The Board noted that the statute does not define probable cause and interpreted the phrase to mean "having sufficient information to lead a reasonable person to conclude that there is a substantial likelihood that drugs or alcohol were either used by or impaired the injured worker." The Board determined there was no indication Evans was impaired by alcohol; standing alone, his accident would not lead a reasonable person to conclude he was impaired when his vehicle left the roadway. Therefore, the Board concluded the respondent lacked probable cause to request the drug test sample, and it was not admissible as evidence of alcohol impairment. The Board noted the blood alcohol test was routine when a commercial driver was involved in a fatality accident, but its routine nature did not make its results admissible absent probable cause.

Statutory interpretation raises questions of law over which appellate courts have unlimited review. Although we give deference to the Board's interpretation of the governing statute, erroneous interpretation or application of the statute justifies appellate relief. *Pruter v. Larned State Hospital,* 271 Kan. 865, 868, 26 P.3d 666 (2001). "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained." *State ex rel. Stovall v. Meneley,* 271 Kan. 355, 378, 22 P.3d 124 (2001) (citing *In re Marriage of Killman,* 264 Kan. 33, 42-43, 955 P.2d [1998]).

Frakes and its insurer argue that the Board's definition of probable cause was too stringent—that requiring an employer to demonstrate the existence of "sufficient information to lead a reason-

able person to conclude that there is a substantial likelihood that drugs or alcohol were either used by or impaired the injured worker" is too demanding a standard. Such a standard, they say, will nearly always prevent admission of blood alcohol test results and frustrate employers' use of the alcohol impairment defense. They insist the 1993 amendments to this provision were intended to have the opposite result, lowering employers' burden of proof and providing them with a conclusive presumption of impairment for a test result of .04 or more. A more appropriate test for probable cause, they assert, would be "whether there is reasonable [ground] for suspicion that Claimant had consumed alcoholic beverages prior to the subject accident such that a reasonable person would suspect blood alcohol concentration of .04 or more."

We see little difference between the probable cause definition applied by the Board and the definition suggested by Frakes and its insurer. Even if we assume the difference asserted by Frakes and its insurer, however, we agree with the Board that the test result could not be considered in the calculus on whether the result would be admitted into evidence. Any other approach would be nonsensical. Statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *KPERS v. Reimer & Koger Assocs. Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997). If the legislature had intended the result of every blood alcohol test to be admissible without independent establishment of some level of suspicion of alcohol use, possession, or impairment, the probable cause requirement would not have been included in the statute as one of the conditions of admissibility.

Here, regardless of which definition of probable cause is correct, we see little evidence of use, possession, or impairment independent of the test result itself. The accident was unremarkable in the view of the investigating Highway Patrol personnel; neither Evans' tardiness nor whatever vague mood difference was observed by Frakes' secretary prompted her to suspect that Evans should not drive; and no alcohol odor or evidence was detected either at the scene or on autopsy. Even after the call from the woman identifying herself as Evans' girlfriend, Frakes' investigation of any link be-

tween alcohol and the accident went nowhere. Had it not been for a routine blood test—prompted by nothing more than Evans' status as a commercial driver, not even reasonable suspicion much less probable cause—apparently the alcohol link to the accident would never have been established. The statute does not permit mere serendipity to govern admission of a test result.

Regarding the merits, the determination of whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.*, 268 Kan. 33, 34, 991 P.2d 406 (1999). "This court does not reweigh the evidence or determine the weight or credibility of the witnesses' testimony." *Kincade v. Cargill, Inc.*, 27 Kan. App. 2d 798, 801, 11 P.3d 63, *rev. denied* 270 Kan. 898 (2000). When the Board makes a negative finding, the party challenging that finding must prove arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. See *Nance v. Harvey County*, 263 Kan. 542, 551, 952 P.2d 411 (1997). No bias, passion, or prejudice has been demonstrated here, and substantial competent evidence supported the Board's negative finding that Frakes and its insurer failed to meet their burden of proof.

Affirmed.