89,239

Dennis Foos, *Appellee,* v. Terminix and Zurich America Insurance, Co., *Appellants.*
(89 P.3d 546)

Opinion filed May 14, 2004.

*Rex W. Henoch,* of Dorothy & Henoch, L.L.C., of Lenexa, argued the cause and was on the briefs for appellant.

*Roger D. Fincher,* of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, argued the cause, and *Rachel Mackey,* of Law Office of Rachel Mackey, of Topeka, was with him on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This is a workers compensation case, applying K.S.A. 1999 Supp. 44-501. The Court of Appeals affirmed the Workers Compensation Board's (Board) determination that Dennis Foos sustained personal injury by accident arising out of and in the course of his employment. However, the Court of Appeals reversed the Board's award of benefits for Dennis Foos, applying the "intoxication exception" to providing benefits under the Workers Compensation Act, 44-501(d)(2). The Court of Appeals found that the Board erred in determining that the results of a blood test were inadmissible to prove Foos was impaired by alcohol. The Board had determined that the blood test lacked probable cause

and its results were inadmissible pursuant to 44-501(d)(2). We granted Foos' petition for review under K.S.A. 20-3018(b).

Under Supreme Court Rule 8.03 (2003 Kan. Ct. R. Annot. 58), we choose to review both holdings of the Court of Appeals and consider whether: (1) Foos was acting within the course and scope of his employment at the time he incurred his injuries; and (2) Foos' blood test results were admissible to prove his alcohol impairment, which in turn contributed to his injuries.

We affirm the Court of Appeals, although as to the second holding we do so on different grounds, and reverse the Board's award of benefits to Foos.

*Facts*

Dennis Foos worked as a pest control technician for Terminix. His employer assigned him a vehicle to use on his route, which contained approximately 200 accounts. On Friday, May 2, 1997, Foos drove from his home in Solomon to the Terminix office in Topeka for a mandatory weekly meeting that began at 8 a.m. After the meeting, he drove to Manhattan to do work for some of his accounts. He worked at Varney's Bookstore from 10:30 to 10:45 a.m. and at the Children's Bookstore from 10:45 to 11:05 a.m.

Around 11 a.m., Foos entered a "hole-in-one" contest at the Wildcat Creek Sports Complex. He remembers leaving from there around noon to eat lunch at McDonald's but has no memories from that time until sometime on Sunday, May 4. Although he had planned to work at some fraternities in Manhattan the afternoon of May 2, those jobs were not performed.

Sometime between 7 and 7:30 p.m. on May 2, Foos' truck left the roadway and struck two guardrails while he was driving westbound on Interstate 70 between Junction City and Abilene. His Solomon residence is west of Abilene on the interstate. He was thrown from the truck and suffered injuries, including head trauma sufficient to cause permanent severing of his olfactory nerves. He was taken by ambulance to Geary Community Hospital in Junction City where he was stabilized and given morphine. He was then transferred by helicopter to the University of Kansas Medical Center in Kansas City (KUMC).

Foos arrived at KUMC at 11:04 p.m. KUMC medical personnel drew and tested his blood at 11:10 p.m. as part of their regular medical procedures. The tests revealed Foos' blood contained opiates and an alcohol concentration of .134.

KUMC personnel reported him to be oriented as to person, place, and time. After consenting to surgery at 12:50 a.m., as part of his preoperative history he reported to medical personnel at 1:10 a.m. that he had "cocaine 1 week ago/9 beers & shots tonight."

The Board made the following findings of fact concerning the blood test and its results:

"At that point [of the blood test] there had been no evidence or indication that claimant had used alcohol before the accident. There was no mention of alcohol or the odor of alcohol in any of the records or the odor of alcohol in any of the records or reports by law enforcement, emergency medical, nor hospital personnel. The first indication of alcohol use came at approximately 1:10 a.m. on May 3, 1997, from claimant himself upon questioning by a nurse and an anesthesiologist for the pre-operative history and physical assessment. Neither the nurse nor the anesthesiologist that questioned claimant testified, but the KUMC Pre-Operative History and Physical Assessment form indicates that claimant reported 'cocaine 1 week ago/9 beers & shots tonight.'"

The administrative law judge (ALJ) held that the test results were admissible under 44-501(d)(2) and denied Foos benefits because his alcohol use contributed to his injuries. He did not reach the parties' other arguments. The Board reversed the ALJ and awarded Foos benefits after rejecting Terminix's three main arguments. The Board first found that despite Foos' deviation from work, he had resumed that work because he was on the highway leading home at the time of the accident. It next excluded the blood test results because Terminix failed to meet the admissibility conditions of K.S.A. 1999 Supp. 44-501(d)(2). Finally, it found that without the blood test evidence, Terminix failed to prove drug or alcohol impairment which contributed to Foos' injuries.

The Court of Appeals determined the threshold issue in Foos' favor, i.e., substantial competent evidence supported the Board's finding that Foos had returned from his deviation from his employment at the time of the accident. It allowed the test results, however, under a "normal course of medical treatment" theory,

leading it to conclude Terminix had established that Foos was impaired by alcohol at the time of his accident, that his impairment contributed to his injuries, and that he was not entitled to benefits. It therefore did not reach the third issue, *i.e.*, whether Terminix proved alcohol impairment and its contribution to the injuries through nontest evidence.

## *Was Foos Acting Within the Course and Scope of His Employment At the Time He Incurred His Injuries?*

Before the Court of Appeals, Terminix argued as a threshold matter that the Board erred in finding Foos sustained personal injury by accident arising out of the course and scope of his employment under 44-501(a). It specifically argued that Foos had deviated from his employment after leaving the Children's Bookstore account and had not returned to his employment at the time of the accident. If Terminix is correct, the other two issues are moot. We agree, however, with the Court of Appeals' rejection of this argument.

As the court stated:

"The Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, provides the grounds upon which relief may be granted in appeals of workers compensation awards entered on or after October 1, 1993. See K.S.A. 2001 Supp. 44-556(a).

'The court shall grant relief only if it determines any one or more of the following:

. . . .

'(4) the agency has erroneously interpreted or applied the law;

. . . .

'(7) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole . . . .' K.S.A. 77-621(c)." 31 Kan. App. 2d at 524-25.

The court correctly observed that whether there has been an accidental injury arising out of and in the course of employment is a question of fact, and its determination will not be disturbed by an appellate court where there is substantial evidence to sustain it, citing *Harris v. Bethany Medical Center*, 21 Kan. App. 2d 804, Syl. ¶ 1, 909 P.2d 657 (1995). It also correctly observed that although

there was no direct evidence as to Foos' destination at the time of the accident, it was the duty of the ALJ and Board to determine "whether Foos had returned to his employment once he was on a direct route home." 31 Kan. App. 2d at 528.

The court correctly held that substantial competent evidence existed to support the finding that, even if Foos had deviated from his employment for a substantial period of time, he had returned to his employment once he was on the direct route back to his home in Solomon because at the time of his injury Foos was "engaging in an activity contemplated by Terminix while traveling on a public interstate highway." 31 Kan. App. 2d at 528; see also *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 899 P.2d 1058 (1995) (substantial evidence supported the Board's conclusion that claimant's death occurred in the course of his employment, despite the fact that he spent 4 hours at a strip club, when his death occurred after resuming the route home).

*Were Foos' Blood Test Results Admissible to Prove His Impairment Due to Alcohol Which in Turn Contributed to His Injuries?*

Terminix argues the Court of Appeals correctly held that Foos' blood test results were admissible to prove his use or consumption of alcohol impaired him and contributed to his injuries, as provided in 44-501(d)(2). Foos responds that Terminix failed to meet the statute's conditions to allow admission of the test results into evidence.

Our analysis requires us to interpret the statute. As we stated in *In re Tax Appeal of Harbour Brothers Constr. Co.*, 256 Kan. 216, 221, 883 P.2d 1194 (1994):

"Interpretation of a statute is a question of law. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). Special rules apply, however, when considering whether an administrative agency 'erroneously interpreted or applied the law':

'The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction. . . . [I]f there is a rational basis for the agency's interpretation, it should be upheld on judicial review. . . . [However,] [t]he determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the

courts.' *State Dept. of SRS v. Public Employee Relations Board,* 249 Kan. 163, 166, 815 P.2d 66 (1991)."

See K.S.A. 77-621(c)(4).

Moreover, the party asserting the Board's action is invalid bears the burden of proving the invalidity. K.S.A. 77-621(a)(1). As a result, Terminix, as the appellant, retains the burden in this court of proving the Board erred. See *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger,* 276 Kan. 232, 245, 75 P.3d 226 (2003).

We begin our analysis by reviewing some of the general tenets of workers compensation law as contained in K.S.A. 1999 Supp. 44-501. If personal injury by accident arising out of and in the course of employment is caused to an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the Workers Compensation Act. K.S.A. 1999 Supp. 44-501(a). The burden of proof shall be on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends. K.S.A. 1999 Supp. 44-501(a).

K.S.A. 1999 Supp. 44-501(d)(2), however, provides the employer relief from liability for compensation under the Act "where the injury, disability, or death was contributed to by the employee's use or consumption of alcohol or any drugs, chemicals, or any other compounds or substances." This has become known as the "impairment defense" or "impairment exception." Once the claimant has met his or her burden of proving a right to compensation, the employer has the burden of proving relief from that liability through subsection (d)(2). *Cf., Evans v. Frakes Trucking,* 31 Kan. App. 2d 211, 216, 64 P.3d 440 (2002).

K.S.A. 1999 Supp. 44-501(d)(2), which provides the basis for the primary dispute in this case, states in relevant part:

"The employer shall not be liable under the workers compensation act where the injury, disability or death was *contributed* to by the employee's use or consumption of alcohol . . . . *It shall be conclusively presumed that the employee was impaired due to alcohol if it is shown that at the time of the injury that the employee had an alcohol concentration of .04 or more.* . . . The results of a chemical test shall not be admissible evidence to prove impairment unless the following conditions were met:

(A) There was *probable cause to believe* that the employee used, had possession of, or was impaired by the drug or alcohol while working;

(B) the test sample was collected at a time *contemporaneous* with the *events establishing probable cause*;

(C) the collecting and labeling of the test sample was performed by a licensed health care professional;

(D) the test was performed by a laboratory approved by the United States department of health and human services or licensed by the department of health and environment, except that a blood sample may be tested for alcohol content by a laboratory commonly used for that purpose by state law enforcement agencies;

(E) the test was confirmed by gas chromatography, gas chromatography-mass spectroscopy or other comparably reliable analytical method, except that no such confirmation is required for a blood alcohol sample; and

(F) the foundation evidence must establish, beyond a reasonable doubt, that the test results were from the sample taken from the employee." (Emphasis added.)

When the Board interpreted the subsection, it held that the probable cause requirement in (d)(2)(A) "makes sense only if [the probable cause] is present before the testing" because "there are privacy issues at stake." It also observed that there are no exceptions in the statute to the probable cause requirement. Consequently, the Board held, since the events establishing probable cause (Foos' statements at 1:10 a.m.) occurred after the blood test (at 11:10 p.m.), the statutory requirement was not met and the results were inadmissible.

The Court of Appeals determined: "The Board's decision to exclude that [test results] evidence is contrary to the established law where blood testing is done by the hospital for the purposes of obtaining relevant medical diagnoses and treatment information." 31 Kan. App. 2d at 529. While the statute does not contain such an exception, the court found a criminal case, *State v. Hickey*, 12 Kan. App. 2d 781, 757 P.2d 735, *rev. denied* 243 Kan. 781 (1988), to be closely analogous, and determined that blood tests taken in the normal course of medical treatment are excepted from the requirements of 44-501(d)(2). We disagree.

*Hickey* was a criminal case involving a Fourth Amendment issue of whether hospital personnel were agents of the State when drawing a blood sample. In contrast, this case does not involve consti-

tutional issues and requires application of the workers compensation statutes, which are a legislative creation. *Injured Workers of Kansas v. Franklin,* 262 Kan. 840, 855, 942 P.2d 591 (1997) (Workers Compensation Act is the legislature's creation of an adequate substitute remedy for the legislatively abolished common-law right of employees to sue employers for injuries). Accordingly, "[o]ur decisions are replete that Workmen's Compensation Act undertook to cover every phase of the right to compensation and of the procedure for obtaining it, which is substantial, complete, and exclusive, and we must look to the procedure of the act for the methods of its administration." *Jones v. Continental Can Co.,* 260 Kan. 547, 557, 920 P.2d 939 (1996) (citing *Bushman Construction Co. v. Schumacher,* 187 Kan. 359, 362, 356 P.2d 869 [1960]).

Since the Workers Compensation Act contains no "normal course of medical treatment" exception to the admissibility of a blood alcohol test in 44-501(d)(2), any such exception to the legislature's scheme must come from the legislature, not the court.

Thus, we review the Board's interpretation of 44-501(d)(2)(B). The Board and courts reviewing the Board's interpretation are required to apply the rules of statutory construction. As we said in another workers compensation case:

"The fundamental rule [of statutory construction] to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *In re Marriage of Killman,* 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). Where the face of the statute leaves its construction uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *Robinett v. The Haskell Co.,* 270 Kan. 95, 100-01, 12 P.3d 411 (2000).

The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *State ex rel. Stovall v. Meneley,* 271 Kan. 355, 378, 22 P.3d 124 (2001) (citing *In re Marriage of Killman,* 264 Kan. 33, 42-43, 955 P.2d 1228 [1998]). Words and phrases that have acquired a peculiar and appropriate meaning in law are to be construed accordingly. *Galindo v. City of*

*Coffeyville*, 256 Kan. 455, 465, 885 P.2d 1246 (1994). Words which are in common usage should be given their natural and ordinary meaning. *Cummings v. City of Lakin*, 276 Kan. 858, 862, 80 P.3d 356 (2004).

"Probable cause" is a phrase which has acquired peculiar and appropriate meaning in the law. We have previously explained that "probable cause" refers to a quantum of evidence which would lead one to believe that something (for example, that a crime had been committed) is more than a possibility. *City of Dodge City v. Norton*, 262 Kan. 199, 203-04, 936 P.2d 1356 (1997) (quoting *State v. Clark*, 218 Kan. 726, 731, 544 P.2d 1372, *cert. denied* 426 U.S. 939 [1976]). Thus, paraphrasing 44-501(d)(2)(A) and(B), before test results can be submitted in a workers compensation hearing, there must be sufficient evidence to lead one to believe that it was more than a possibility that the employee used, had possession of, or was impaired by drugs or alcohol while working, and the test sample must have been collected at a time contemporaneous with the events establishing this belief.

"Contemporaneous" is a word of common usage. It is defined as: "Arising, existing, or occurring during the *same period of time.*" (Emphasis added.) Webster's II New College Dictionary 243 (1999). The ALJ in this case applied this definition, finding: "The claimant's admission to a drinking binge establish[ed] probable cause the claimant was impaired. The blood samples were collected within *the same period of time* as claimant's admission, which the court finds satisfies the requirement of contemporaneous collection." (Emphasis added.)

In contrast, the Board's interpretation substitutes the words "subsequent to" for the words "contemporaneous with." Such a construction is contrary to the tenets of statutory construction requiring us to presume the legislature expressed its intent through the language it utilized and requiring us to apply the accepted and common meaning of words.

Additionally, the Board's interpretation shifts the focus of the statute to one of when tests may be performed as opposed to the legislature's focus, which was upon when test results will be admissible in hearings. As held by the Court of Appeals panel in

*Evans,* the effect of 44-501 is to prohibit admission of results when no probable cause exists independent of the test results. 31 Kan. App. 2d at 215-16. There, the court upheld the Board's exclusion of the blood test results because they were pursuant to a blood test that was not prompted by probable cause or even a reasonable suspicion, but instead "by nothing more than [the employee's] status as a commercial driver" who was involved in a fatal accident. 31 Kan. App. 2d at 216. While Terminix argues *Evans* is distinguishable and irrelevant because there had been no probable cause found, we find it of guidance to the extent it rejected a commercial driver's "routine blood test" exception to the requirements of 44-501(d)(2). However, we agree with Terminix that *Evans* is distinguishable because in this case there was probable cause independent of the blood test.

Although the decision in *Evans* does not cite the Federal Omnibus Transportation Employee Testing Act, 49 U.S.C. § 31306 (2000), that provision mandates testing when a commercial driver, such as Evans, is involved in a fatal accident. Other federal legislation, while not mandating testing, requires federal contractors to assure that the workplace is drug free. See Drug-Free Workplace Act of 1988, 41 U.S.C. § 701 *et seq.* (2000). This legislation and other drug-free workplace initiatives result in random testing in the workplace.

The legislative history of 44-501, in addition to reflecting a trend of lessening the burden upon the employer to establish the impairment exception, reveals that the legislature was aware of the reality of random and mandatory testing in the workplace.

The Kansas Legislature passed its first workers compensation laws in 1911. From the very beginning, the employee's intoxication was a defense to his or her claim of compensation. "[I]f it is proved that the injury to the workman *results . . . from his intoxication,* any compensation in respect to that injury shall be disallowed." (Emphasis added.) L. 1911, ch. 218, sec. 1.

In 1967, the legislature raised the employer's standard of proof: "[I]f it is proved that the injury to the workman results . . . *solely* from his intoxication, any compensation in respect to that injury shall be disallowed." (Emphasis added.) L. 1967, ch. 280, sec. 1.

In 1974, however, the legislature retreated and diluted the employer's standard of proof when it changed the word "solely" to "substantially": "[I]f it is proved that the injury to the workman results . . . *substantially* from his intoxication, any compensation in respect to that injury shall be disallowed . . . ." (Emphasis added.) L. 1974, ch. 203, sec. 1.

In 1993, the legislature further diluted the employer's standard of proof: "The employer shall not be liable under the workers compensation act where the injury, disability or death was *contributed to by the employee's use or consumption of alcohol . . . .*" (Emphasis added.) L. 1993, ch. 286, sec. 24.

The 1993 legislature also established specific requirements for admitting a chemical test into evidence to prove presumptive impairment, including the provision at issue in this case of whether there was probable cause contemporaneous with the test and provisions requiring proof of chain of custody, establishing testing standards, and requiring foundation for the test results. L. 1993, ch. 286, sec. 24. The legislative record reveals that these requirements were intended to somewhat balance the reduced burden on the employer. The admission requirements were added pursuant to a proposal by the Kansas Chamber of Commerce and Industry: "KCCI would suggest further protecting employees by including the procedures employers are responsible to follow to receive an employee misconduct ruling in the Kansas Employment Security Law." Minutes of the Senate Committee on Labor, Industry and Small Business, March 19, 1992, Attachment 5.

It is clear that the legislature, in 1993, followed KCCI's suggestion and borrowed the language from a statute concerning chemical testing for unemployment compensation purposes, K.S.A. 1992 Supp. 44-706(b)(2), and placed those requirements into K.S.A. 44-501(d)(2) for workers compensation purposes. These unemployment compensation procedures had not been a part of 44-706 until 1991, when the legislature acted in response to this court's decision in *National Gypsum Co. v. State Employment Security Bd. of Review*, 244 Kan. 678, 772 P.2d 786 (1989). See Minutes of the House Committee on Labor and Industry, March 1, 1990, Attachment 1. There, this court had held that an employee who tested positive

for marijuana during an employer's drug test did not fit within the statute disqualifying employees for unemployment compensation benefits because the employer did not meet its burden to prove that the misconduct was "connected with the employee's work" under K.S.A. 1988 Supp. 44-706(b). In other words, the employer failed to prove that the off-the-job misconduct of marijuana use had an actual on-the-job impact. 244 Kan. at 687. The legislature reacted by creating a presumption that an employee had engaged in misconduct if impaired from alcohol or nonprescription drugs while working. The legislative history reveals that the intent was to allow employers to meet the requirements of the Drug-Free Workplace Act and implement drug-free workplace programs without having to pay employees benefits after they were fired for drug use revealed through drug testing. Minutes of the House Committee on Labor and Industry, March 1, 1990, Attachment 2.

Thus, the legislature, when placing these same provisions into the Workers Compensation Act, was aware that workplace drug testing would occur with or without probable cause. Because testing might be mandated, either by the government or an employer's policy, testing might occur contemporaneously with the investigation of the events causing the worker's injury. Also, as in this case, the injury might require medical treatment and, as a result, testing might occur contemporaneously with investigation.

The legislature, in 44-501(d)(2), established the level for conclusive presumption of workplace impairment at .04. L. 1993 ch. 286, sec. 24. This is the same level at which a presumption arises in proceedings to revoke a commercial driver's license (K.S.A. 8-1001[j]), but is less than the .08 threshold at which a presumption of impairment arises in criminal prosecutions for driving under the influence (K.S.A. 8-1005) or in administrative proceedings for revocation of a noncommercial driver's license (K.S.A. 8-1001[h]). At a lower level of impairment, the indicia of impairment may be different or more subtle than those typically examined in a criminal prosecution for driving under the influence. As such, an employer may not have a quantum of evidence sufficient to meet the probable cause standard before the test is performed, yet may under some circumstances be legally required to have the employee

tested or, although not mandated, may test under internal policies as part of a drug-free workplace initiative. Also, especially given the low threshold, an employer may decide to test immediately rather than to have the blood alcohol level dissipate because of a delay while an investigation is undertaken. As such, testing may occur before or simultaneous with the investigation of the accident and that investigation may generate a sufficient quantum of evidence to make it more than a possibility that the employee used, possessed, or was under the influence of alcohol or drugs while working. In other words, the investigation or other events may establish a basis for probable cause independent of, but contemporaneous with, the taking of the test sample.

Having considered the meaning of the words used by the legislature, the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute would have under different constructions, we conclude that 44-501(d)(2) requires that probable cause arise, exist, or occur contemporaneous with the collection of the test sample in order for a test of alcohol concentration to be admitted into evidence during a workers compensation hearing.

Whether a test sample was collected contemporaneous with the events establishing probable cause is a question of fact, and its determination will not be disturbed on appeal where there is substantial evidence to sustain it. In this case, the ALJ made the finding of fact that the sample was collected during the same time period as the events establishing probable cause and, under the circumstances of this case where these events were part of an emergency room treatment for the injury, the finding is sustained by substantial evidence.

For these reasons, we hold that Foos suffered injury during the course and scope of his employment; that Foos' blood test results were admissible; that Terminix, by application of the presumption, established that Foos was impaired due to alcohol; and that substantial evidence supports the ALJ's conclusion that Foos' consumption of alcohol contributed to the injury.

The Court of Appeals is affirmed, and the Board is affirmed in part and reversed in part.

BEIER, J., not participating.

LARSON, S.J., assigned.

NUSS, J.: dissenting. I respectfully dissent from the majority opinion for several reasons.

First, the legislative history cited by the majority reveals that while in 1993 the legislature further diluted the employer's standard of proof, it also introduced some specific standards and conditions concerning how employers could prove alcohol's "contribution" to an employee's injury. It amended the statute to provide a level for conclusive presumption of impairment (.04%) and six specific requirements for admitting a chemical test into evidence to prove that presumptive impairment. L. 1993, ch. 286, sec 24. The admission requirements were added pursuant to a proposal by the Kansas Chamber of Commerce and Industry, "KCCI would suggest *further protecting employees* by including the procedures employers are responsible to follow to receive an employee misconduct ruling by the Kansas Employment Security Law." (Emphasis added.) See Minutes of the Senate Committee on Labor, Industry and Small Business, March 19, 1992, Attachment 5.

As the majority correctly points out, the 1991 legislature had reacted to *National Gypsum Co. v. State Employment Security Bd. of Review*, 244 Kan. 678, 772 P.2d 786 (1989), by amending the unemployment compensation laws to improve the employer's ability to prove misconduct connected with the work and thus disqualify a claimant from benefits. However, it also included six narrow — and exclusive — requirements for admitting into evidence the chemical test, *e.g.*, probable cause, which I regard as safeguards to the employee. I therefore agree with the Kansas Chamber of Commerce and Industry that in borrowing the specific requirements for chemical test admissibility (for purposes of denying benefits) from the Unemployment Compensation Act and placing them in the Workers Compensation Act (for purposes of denying

benefits), the employees would be further protected. I conclude that the legislature intended this additional protection for workers compensation claimants. For example, though workers compensation is a civil proceeding, K.S.A. 1999 Supp. 44-501(d)(2)(F) requires the higher criminal law standard of "beyond a reasonable doubt" for the foundation evidence to establish that the test results were from the sample taken from the employee. Consequently, even the majority concedes "the legislative record reveals that these requirements were intended to somewhat balance the reduced burden on the employer."

I do not find, however, a legislative intent to couple the continual express dilution of the employer's standard of proof — from "injury results solely from intoxication" to mere "alcohol use or consumption contributed to injury" — with another, implied dilution of the six specific, exclusive requirements for admitting test results into evidence against the employee. Yet, the majority does so when it allows probable cause to follow the testing.

Second, if probable cause is not a prerequisite for the testing, then the probable cause requirement is meaningless. In my view, the majority essentially eliminates it altogether; virtually all an employer will now be required to demonstrate is that at a certain time a chemical test was given which yielded a certain result. This result can then be extrapolated backward to show "that at the time of the injury that the employee had an alcohol concentration of .04 or more." K.S.A. 1999 Supp. 44-501(d)(2).

Yet in *Evans v. Frakes Trucking,* 31 Kan. App. 2d 211, 64 P.3d 440 (2002), as the majority points out, the Court of Appeals upheld the Board's exclusion of the blood test results because they were pursuant to a blood test that was not prompted by probable cause or even a reasonable suspicion but instead "by nothing more than [the employee's] status as a commercial driver" who was involved in a fatal accident. 31 Kan. App. 2d at 215-16. Similarly, Foos' blood test results should be excluded because they were also pursuant to a blood test that was not prompted by probable cause or even a reasonable suspicion, but instead by nothing more than his status as a driver who was involved in a near-fatal accident and then underwent a hospital's regular medical procedures. I agree

with the *Evans* court's statement: "The statute does not permit mere serendipity to govern admission of a test result." 31 Kan. App. 2d at 215-16.

Stated another way, the majority dilutes the statutory language requiring "probable cause" and essentially converts it into "random." In the world of employee drug and alcohol testing — which the majority concedes was at issue in *National Gypsum Co.* and which in turn eventually led to the creation of the present statute — these phrases, along with "reasonable suspicion," have become terms of art. Random testing certainly possesses a profoundly different meaning from the other two. See *Eaton v. Iowa Employment Appeal Bd.* 602 N.W.2d 553 (Iowa 1999); *Twigg v. Hercules Corp.,* 185 W. Va. 155, 406 S.E.2d 52 (1990).

Reasonable suspicion is considered to be a lesser standard than probable cause. *State v. Pritchett,* 270 Kan. 125, Syl. ¶ 3, 11 P.3d 1125 (2000); *Twigg,* 185 W. Va. at 159. In practice, however, both these phrases mean just what their terms suggest; testing *after,* for example, a supervisor's observation of an employee exhibiting drug and alcohol symptoms. See, *e.g., Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 609, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989) (testing after reasonable suspicion based upon employee's disorientation, bloodshot and watery eyes, or the detection of alcohol on an employee's breath); *Johnson v. Massachusetts Bay Transportation Authority,* 418 Mass. 783, 785, 641 N.E.2d 1308 (1994) (probable cause to test employee for drugs where at time test was requested employee's eyes had a heavy look and he appeared to be under influence of something).

Similarly, employers also use "post-accident testing," which is just as its name suggests: testing *after* an accident to determine if alcohol or illegal drugs contributed to it. See, *e.g., Skinner,* 489 U.S. at 609 (testing regulation titled "Post-Accident Toxicological Testing" which authorized testing following certain accidents).

Random testing is much different. It is a form of "suspicionless" testing. See *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 132 L. Ed. 2d 564, 115 S. Ct. 2386 (1995) (testing of student athletes whose names are blindly drawn from a hat). See *Eaton,* 602 N.W.2d 553; *Twigg,* 185 W.Va. 155.

Accordingly, when the Board held that the probable cause requirement in K.S.A. 1999 Supp. 44-501(d)(2)(A) "makes sense only if [the probable cause] is present before the testing," its interpretation was entirely consistent with what "probable cause" has come to mean in the world of employee drug and alcohol testing. This interpretation is supported by the majority's acknowledgment that when the legislature placed the requirements in the statute it "was aware that workplace drug testing would occur with or without probable cause," and by the statutory language actually used, "probable cause," which strongly suggests the legislature deliberately rejected the results of suspicionless testing, *i.e.*, without probable cause.

Moreover, the Board's interpretation, to which the majority purports to give deference under the doctrine of operative construction, avoids the problems described above. This interpretation is also consistent with the legislative intent, particularly as expressed by the sequence of the requirements in K.S.A. 1999 Supp. 44-501(d)(2). In my view, the sequence is not coincidental, but the logical progression of the events as intended by the legislature — from initial discovery of the employee's possibly impaired state through the test results' admission into evidence.

(A) *probable cause to believe* employee was impaired by drug or alcohol;

(B) *sample collected;*

(C) *sample collecting and labeling performed* by licensed health care professional;

(D) *test performed* by an approved laboratory;

(E) *test results confirmed, i.e.,* a subsequent action, by independent test;

(F) *test results established by foundation evidence* as coming from employee's sample.

As the majority points out regarding the Court of Appeals holding, since the Workers Compensation Act contains no "normal course of medical treatment" exception to the admissibility of a blood alcohol test in K.S.A. 1999 Supp. 44-501(d)(2), any such exception to the legislature's scheme must come from the legislature, not the court. Likewise, eliminating, or at least diluting, the

probable cause requirement from the statute is a job for the legislature, not this court. See *Injured Workers of Kansas v. Franklin,* 262 Kan. 840, 855, 942 P.2d 591 (1997); *Jones v. Continental Can Co.,* 260 Kan. 547, 557, 920 P.2d 939 (1996) (our decisions are replete that the Workers Compensation Act undertook to cover every phase of the right to compensation and of the procedure for obtaining it, which is substantial, complete, and exclusive, and we must look to the procedure of the act for the methods of its administration).

Finally, if the statutory requirements are not met for admitting the results of the chemical test into evidence, an employer is not without recourse. It still has the right to prove impairment and contribution through reliable admissions by the employee, testimony from eyewitnesses, expert medical testimony, and other evidence, just as employers have done since 1911 when the Workers Compensation Act and the intoxication exception/impairment defense first became law. Indeed, Terminix attempted this alternative means of meeting its burden of proof, but failed.

The Board found that Terminix failed to prove, by evidence other than the inadmissible blood test results, that Foos was impaired and that his impairment contributed to his injury. It specifically found that Foos' statements of alcohol and cocaine use were insufficient because they were of questionable reliability due to his extreme trauma and the possibility they were given under the influence of pain medications, including morphine at Geary Community Hospital. It also found that the testimony of Terminix's experts opining Foos' alcohol impairment at the time of the accident was partly based on the inadmissible test results and therefore itself inadmissible, suggesting the testimony would have been admissible and persuasive had the questions to the physicians been posed differently. It also found no evidence was introduced to show that any impairment actually contributed to Foos' accident and injury.

For these reasons, I dissent.

ALLEGRUCCI, J., joins in the foregoing dissent.